J-A23023-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| A.C., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| A.C., | |
| Appellee | No. 360 WDA 2014 |

Appeal from the Order entered January 31, 2014,
in the Court of Common Pleas of Armstrong County,
Civil Division, at No(s): 2009-0713-CIVIL

BEFORE:  DONOHUE, ALLEN, and MUSMANNO, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED AUGUST 25, 2014**

A.C. ("Mother") appeals from the trial court's custody order, which
*inter alia*, granted parties shared legal custody of their three children
("Children"), and awarded A.C. ("Father") primary physical custody.  We
affirm.

The trial court convened a one-day custody trial on November 19,
2013.  The trial court detailed its factual findings as follows:

> Mother and Father are the parents of three minor children:
> [B.C. (DOB: 9/01), J.C. (DOB: 3/04), and L.C. (DOB 12/06)]
> ("the Children").  All of the Children were born of the parties'
> marriage, which ended by a decree of divorce entered December
> 4, 2012.  The parties physically separated in March 2009 and
> executed a Custody Consent Order (the "Consent Order") on or
> about April 17, 2009.  The Consent Order provides that Mother
> shall have primary physical custody of the Children, and Father
> shall have partial physical custody three weekends each month
> from Friday at 6:00 p.m. until Sunday at 8:00 p.m.  Each party
> also is entitled to one uninterrupted week of custody during the
> summer, and the holidays are shared equally.  Father filed his

Petition for Modification of Custody on or about January 18, 2013, but the parties continue to follow the terms of the Consent Order.

Mother is 31 years old and currently resides with her paramour,[J.U.]. They live at Mr. U[]'s residence in Natrona Heights, Pennsylvania, where Mother and the Children have resided since 2010. Mother also has a child with Mr. U[.] ([C.U.]). Mother is employed at the Get Go convenience store in Sarver, Pennsylvania, where she works approximately 32 hours per week, mostly at night. She also works weekends on occasion. Mother does not currently have a driver's license and does not have a vehicle. If she is working at a time when she has custody of the Children, Mr. U[.] provides childcare. Mother is content with the current custody schedule, although she would like the option to have custody of the Children when Father is at work. Mother has driven on several occasions without a driver's license, including to transport the Children, but this has not occurred for a year or more. Mother drinks alcoholic beverages only on occasion. She and Mr. U[.] are living together but are not married or engaged.

After the parties' separation, Mother moved with the Children to Ford City to stay with her mother, [K.K.]. She then resided in an apartment in Ford City and enrolled the school-aged Children at Lenape Elementary School. Mother then moved to Natrona Heights to reside with Mr. U[.] and enrolled the Children in school in the Highlands School District. Mother and Mr. U[.] then separated, and Mother moved with the Children to the Marion Center area, enrolling the Children in that school district. Mother moved in with her then-boyfriend "J[.]," where she resided for 2 months. While the Children were enrolled in the Marion Center School District, Mother had Father's name removed from the notice list regarding the Children's educational matters. In 2010, Mother then moved back to Natrona Heights to her current residence with Mr. U[.].

Mother left the marital residence in March 2009 because of Father's abusive habits. She filed a Protection from Abuse ("PFA") action in 2005 related to an incident where Father threatened her with a hunting rifle. She later withdrew the action to permit Father to keep his hunting firearms. She also filed a PFA action immediately after leaving the residence in 2009. Mother alleged that Father had choked her in the

Children's presence. She also reports that Father has had suicidal tendencies in the past.

Mother has encouraged the Children to become involved in extra-curricular activities in the Highlands School District, but reports that Father would not transport the Children to weekend activities because it interfered with his custody time. The Children are involved in band and chorus, but do not participate in sports or other activities. [B.C.] was enrolled in boy scouts at one point, but ceased participation because he could not attend a Saturday activity due to Father's custody time.

Both [B.C.] and [J.C.] have Individualized Education Programs ("IEPs"), and Mother attends the meetings regularly. [J.C.] also has a speech impediment and has been diagnosed with ADHD. Mother has resisted medicating [J.C.] for the condition because she believes that ADHD is overly-diagnosed. Recently, however, after [J.C.'s] teachers reported to Mother that [J.C.] was having increased difficulty in school, she agreed to have him re-evaluated.

J[.U.] is 51 years old. He resides with Mother in Natrona Heights, Pennsylvania with the Children and his own child to Mother, [C.U.]. Mr. U[.] works at Allegheny Steel Distributors, where he has been employed for many years. His working hours generally are from 8:00 a.m. to 5:00 p.m., Monday through Friday. He has a step-son and a biological daughter from his previous marriage. Mr. U[.] smokes cigarettes on a regular basis in Mother's home. He also drinks frequently, but does not believe that he drinks excessively. He was arrested in 2011 for Driving Under the Influence. He received Accelerated Rehabilitative Disposition, the terms of which he completed in 2012. Mr. U[.] currently is married to another woman, but their divorce is pending.

Mother's chief concerns regarding Father's childcare abilities are his anger-management problems and the fact that he reportedly has been emotionally unstable in the past, threatening suicide in front of Mother on at least one occasion. She also believes that Father is emotionally distant from the Children.

Father is 37 years old and currently lives in the parties' former marital residence in Homer City, Pennsylvania with his fiancée, K[.S.]. Father and Ms. S[.] plan to get married on June 7, 2014. Father has no other children. [B.C.] and [J.C.] share a

bedroom at Father's residence and [L.C.] has her own room. Father is employed with Rosebud Mining Company, where he works during the week and every other Saturday.

Father has several concerns with Mother's parenting skills. He believes that Mother is inattentive to the Children's schoolwork and educational development. Father introduced progress reports of the Children indicating that they have difficulty completing assignments. Both [B.C.] and [J.C.] have IEPs and Mother has, on at least one occasion, not attended the IEP meetings and was not available by telephone. Father also believes that Mother has been negligent in making sure that the Children regularly attend doctor and dentist appointments. Father contends that he has taken the Children to all of their eye doctor and dental appointments because Mother would not do so. He also claims that Mother failed to ensure that the Children received all of their regularly-scheduled immunizations.

Father further contends that Mother lacks sufficient discipline skills with the Children. Father believes that Mother uses corporal punishment too often and leaves the Children alone unattended by an adult. Father believes that [J.C.'s] ADHD should be medicated. He denies having ever choked Mother or held a gun to her head and does not believe that any physical abuse occurred during the parties' marriage.

When the Children are at Father's residence, he performs all parenting duties along with his fiancée, Ms. S[.]. Father cooks, does laundry, cleans, helps the Children with their schoolwork when they bring it, and engages in sporting activities with the Children. Father's extended family lives in Elderton, and they assist him in providing childcare on a regular basis.

K[.S.] is 31 years old and is Father's fiancée. She lives with Father at his residence in Homer City, Pennsylvania. She initially moved in with Father in July 2009, and then moved out in 2010. She completed post-secondary education at Indiana University of Pennsylvania and graduated with a degree in sociology in 2007. She has never been married and has no children. She reports having a good relationship with the Children and is willing to significantly modify her lifestyle if Father is awarded primary physical custody. Ms. Smail works at Martin's grocery store in Indiana, Pennsylvania, where she has been employed for over 10 years. She currently is a front-end manager and generally works during the week and occasionally

on Saturdays. She provides childcare for the Children when Father is working, and if they both are working, Father's parents will provide childcare.

[B.C.] is 12 years old and resides primarily with Mother in Natrona Heights, Pennsylvania. He attends Highlands Middle School in Natrona Heights. He enjoys hunting with Father and boy scouts. [B.C.] stated Mr. U[.] often smokes in the same room with him and that the smoke affects his asthma. He currently uses an inhaler to help with his respiratory problems. [B.C.] gets along moderately well with Mr. U[.], but admits that he gets along better with Ms. S[.]. [B.C.] would rather spend a majority of his time with Father. [B.C.] cannot recall any incidents of violence or abuse between Mother and Father.

[J.C.] is nine years old and is in the fourth grade at Grandview Elementary School in Tarentum, Pennsylvania. [J.C.] would rather live primarily with Father because Father is "nice." [J.C.] also likes Ms. S[.] better than Mr. U[.]. [J.C.] stated that Mother uses her belt as a form of discipline when the boys are misbehaving.

The [trial c]ourt did not interview [L.C.].

Trial Court Memorandum, 1/31/14, at 1-8.

On January 31, 2014, the trial court issued its memorandum and order awarding the parties shared legal custody, with Father having primary physical custody. Mother filed a timely appeal and concise statement of matters complained of on appeal, in which she presents the following issues:

1. DID THE TRIAL COURT ERR IN FINDING THAT THE BEST INTEREST OF THE MINOR CHILDREN WAS FOR FATHER TO HAVE PRIMARY CUSTODY?

2. DID THE TRIAL COURT ERR IN APPLYING THE SIXTEEN FACTORS SET FORTH IN §5328 OF THE PENNSYLVANIA CHILD CUSTODY LAW?

3. DID THE TRIAL COURT ERR IN RENDERING DECISIONS NOT SUPPORTED BY THE WEIGHT OF THE EVIDENCE AND FINDINGS OF RECORD?

Mother's Brief at 4.

Within her brief, Mother concedes her "three issues presented on appeal are intermingled and supported by the same legal argument." *Id*. at 6. Although Mother has three sections in the argument portion of her brief, the second and third sections merely incorporate "the reasoning and case law set forth above." *Id*. at 16. Given the foregoing, we address Mother's issues together.

This Court has summarized our scope and standard of review in custody cases as follows:

> [O]ur scope is of the broadest type and our standard of review is abuse of discretion. This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*E.D. v. M.P.*, 33 A.3d 73, 76 (Pa. Super. 2011) (citation omitted).

Further, with any child custody case, the paramount concern is in the best interests of the child. *J.R.M. v. J.E.A.*, 33 A.2d 647, 650 (Pa. Super. 2011) (citation omitted). "This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical,

intellectual, moral and spiritual well-being of the child." *Id.* Several such factors are enumerated at 42 Pa.C.S.A. section 5328(a). "All of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." *J.R.M.*, 33 A.2d at 652. As noted above, the weight accorded each of these factors is for the trial court. *E.D.*, *supra*.

Here, Mother takes issue with the weight the trial court assigned to certain custody factors. Mother's Brief at 8-15. Mother further asserts that "the trial court's conclusion is manifestly unreasonable in light of its' [sic] findings." *Id*. at 15. We disagree.

Our review of the 188 pages of the notes of testimony from the custody trial very much supports the trial court's factual findings. In its memorandum supporting its custody award, the trial court properly observed:

> The primary concern in any custody case is the best interests of the child. This standard considers all factors that legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being. "A party seeking modification of custody arrangements has the burden to show that modification is in the child's best interest." "In evaluating whether a modification of custody is in a child's best interest, the court has an obligation to consider all relevant factors that could affect the child's well-being."

Trial Court Memorandum, 1/31/14, at 8-9 (citations omitted).

The trial court then discussed its factual findings as they relate to each custody factor enumerated at 23 Pa.C.S.A. § 5328(a). After considering each of these factors, the trial court concluded:

Considering all of these factors together, and giving each its appropriate weight, we find that the Children's best interest would be served by the parties continuing to share legal custody of the Children. We further find that it would be in the Children's best interest for Father to maintain primary physical custody, with liberal partial custody to Mother.

Trial Court Memorandum, 1/31/14, at 15.

The trial court explained:

Although we do not doubt that Mother cares deeply for the Children, and can provide for their basic daily needs, we believe that Mother has demonstrated a pattern of conduct over the past several years that is fraught with poor decision-making. Mother has not provided the Children with a stable, consistent, secure living environment. Instead, she seems to make decisions involving the Children based on how it will affect her personal life. The Children's behavioral and educational problems no doubt are due in no small part to their having been exposed to several different schools, school districts, and father-figures over the past several years. Moreover, Mother currently is living with Mr. U[.], who is married himself. Mother has a child with Mr. U[.], but is neither engaged nor planning to marry him.

Father, on the other hand, has lived in the former marital residence consistently and has maintained a constant relationship with Ms. S[.], who he will marry in just a few months. Father also is gainfully employed. The two Children who the Court interviewed expressed a preference to reside with Father because he was "nicer" than Mother. The Children were not perfectly clear in articulating their reasons for preferring to live with Father, but they were very clear in indicating that they have a much better relationship with Ms. S[.] than with Mr. U[.]. [B.C.] also indicated that Mr. U[.]'s smoking irritates his asthma. We further find that Father's immediate family is more accessible to provide additional childcare during times when Father works or is otherwise unavailable.

Neither party presents a direct physical, psychological, or emotional threat to the Children, but we find that Father's gainful employment, stable and functional household, and consistent lifestyle will provide the Children with a living

arrangement in which their behavioral, educational, and emotional needs can be better served. Moreover, Mother does not have a driver's license, does not have a car, and does not own her home. Father has demonstrated a willingness and ability to provide for the Children's everyday needs, including their medical care, which it seems was neglected at times by Mother.

In sum, we find that Father is more capable going forward of providing the Children with the consistent, supportive, financially-secure living environment that they will need to thrive. We also find, based on the parties' historical behavior, that Father is more willing and able to provide for the Children's educational and medical needs as they grow older. We do not make any findings that either parent is incapable of providing childcare for the Children or poses a threat to them. We simply find that an analysis of the relevant custody factors supports an award of primary physical custody to Father.

Trial Court Memorandum, 1/31/14, at 16-18.

Our review of the record supports the trial court's emphasis on stability and continuity for the Children in awarding Father primary custody. Although Mother takes issue with the weight the trial court accorded the evidence, we may not substitute our judgment for that of the trial court. **E.D.**, *supra*. Accordingly, Mother's appeal does not warrant relief.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/25/2014

- 9 -