# Whetzel v. Whetzel

C.P. of Lawrence County, No. 11491 of 2008, C.A.

*William M. Panella,* for Lewis J. Clinkscale
*Susan M. Papa,* for Clint Robinson
*Bradley G. Olson, Jr.,* for Angel L. Whetzel
*Danelle M. Whetzel,* pro se

HODGE, *J.,* Jan. 20, 2015—Before the court for disposition is defendant's petition for relocation. The defendant, Angel Whetzel (hereinafter, "mother") is the natural mother of five minor children: Lynniah Clinkscale[1], born March 27, 2012; Casen Clark[2], born September 6, 2009; Donovan Whetzel[3], born October 20, 2006; D'Aliyah Whetzel[4], born September 24, 2001; and Chantel Searcy[5], born November 26, 1996. Danelle Whetzel is the natural father of Donovan Whetzel and D'Aliyah Whetzel. Lewis

---

1. Lynniah Clinkscale is the subject minor child of the custody action initiated at Case Number 10671 of 2012, Civil Division.

2. Casen Clark is one of two subject minor children of the custody action initiated at Case Number 10114 of 2013, Civil Division.

3. Donovan Whetzel is the subject minor child of the custody action initiated at Case Number 11491 of 2008, Civil Division.

4. D'Aliyah Whetzel is one of two subject minor children of the custody action initiated at case number 10114 of 2013, Civil Division.

5. Chantel Searcy is the subject minor child of the custody action initiated at Case Number 11060 of 2013, Civil Division.

Clinkscale is the natural father of Lynniah Clinkscale. The natural fathers of Chantel Searcy and Casen Clark have not been involved in the instant custody proceedings, nor are they involved in the respective children's lives.

Clint Robinson (hereinafter, "maternal grandfather") is the maternal grandfather of all of the minor children. maternal grandfather initiated custody complaints at Case Number 11060 of 2012, Civil Division and Case Number 10114 of 2013, Civil Division. At the remaining cases, numbered 11491 of 2008, civil division, and 10671 of 2012, civil division, maternal grandfather petitioned the court to intervene, which request was uncontested by the respective parties.

On June 17, 2014, maternal grandfather filed a petition for special relief, alleging that mother moved from her prior residence in New Castle, Pennsylvania to Campbell, Ohio without providing the requisite notice, pursuant to 23 Pa.C.S.A. §5337. Maternal grandfather requested temporary primary physical custody of the minor children pending a hearing, which was granted by this court. Mother subsequently filed a petition for special relief, wherein mother requested primary physical custody be returned to her pending a final hearing. The court denied mother's request but preserved her argument for consideration at the hearing on maternal grandfather's petition for special relief scheduled for August 6, 2014. On August 6, 2014, the parties appeared before the court and requested to brief the issue of whether maternal grandfather had standing to request primary custody of the minor children given mother's failure to comply with 23

Pa.C.S.A. §5337. On August 29, 2014, this court issued an order confirming maternal grandfather's standing in these proceedings and again directed mother to file a petition for relocation in conformity with 23 Pa.C.S.A. §5337. On September 10, 2014, mother filed a petition for relocation. In her petition, mother stated that she moved from New Castle, Lawrence County, Pennsylvania to Campbell, Mahoning County, Ohio. Mother averred that she has a stable and secure residence, which is close to her current employer. Additionally, mother is attending Youngstown State University, and mother's move would enable mother to maximize her time with her children while maintaining employment and attending school. Maternal grandfather objected to mother relocating with any of the minor children. Lewis Clinkscale objected to mother relocating with Lynniah. Danelle Whetzel did not oppose mother's relocation with Donovan Whetzel and D'Aliyah Whetzel.

In 2011, the Pennsylvania Legislature adopted a new Child Custody Act ("Act"), effective on January 24, 2011. *See* 23 Pa.C.S.A. §§ 5321-5340. The new Act applies to "disputes relating to child custody matters" filed after the effective date of the new law. 23 Pa.C.S.A. § 5321. In *E.D. v. M.P.*, 33 A.3d 73, 76 (Pa. Super. 2011), we held that the Act applied to any proceeding, including a petition for relocation, initiated by a *filing* made after the effective date of the Act. Thus, the standards set forth in the Act must be considered by the court in evaluating mother's request to relocate with the minor children. Section 5337(h) of the Act mandates that the trial court shall consider all of the factors listed therein, giving weighted consideration to

those factors affecting the safety of the child. The specific factors enumerated by Section 5337(h) are listed in the following discussion and addressed by the court in turn.

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the non-relocating party, siblings and other significant persons in the child's life.

Mother has been the primary caregiver for all of the minor children since their birth. Mother's relationship with each of the minor children is strong, and with the exception of the past few months when this court directed that maternal grandfather have primary custody, the children have primarily relied on mother to provide them with all of their daily needs.

It must be noted that mother's oldest child, Chantel Searcy, will continue to live with maternal grandfather even after a resolution of these proceedings. Mother and maternal grandfather have agreed that it is in Chantel's best interest to remain with maternal grandfather so she can complete her secondary education in the New Castle Area School District. Given Chantel's age and academic stability in her current school district, the court accepts this arrangement as being in Chantel's best interests. The remaining portion of the court's analysis shall therefore only apply to the remaining four children.

Additionally, mother's youngest child, Lynniah Clinkscale, has remained with mother despite this court's June 17, 2 014 Order providing maternal grandfather with primary custody of the minor children. Maternal

grandfather provided mother with custody of Lynniah because of her young age. Lewis Clinkscale, Lynniah's father, continues to object to mother maintaining custody of Lynniah in Campbell, Ohio, but has made arrangements with mother and maternal grandfather to regularly see Lynniah while mother's petition for relocation is pending before the court.

Alternatively, maternal grandfather also has a close relationship with the minor children, and he stated that he has always tried to make himself available to mother and the minor children. Maternal grandfather stated that his home will always be available to the children, and he remains dedicated to their needs. Lewis Clinkscale also presents himself as a capable and caring father to Lynniah, and the testimony establishes that Lewis Clinkscale has consistently worked to secure a parental bond with Lynniah after being granted partial custody.

The court is unsure of Danelle Whetzel's relationship with the minor children, Donavan and D'Aliyah. The testimony only inferred that Danelle Whetzel is involved to some degree and that he does not oppose mother's relocation.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

The children range in age from two years, five years, eight years and thirteen years old, respectively. If the relocation is granted, Donovan and D'Aliyah will have

to change school districts, which became a contentious factor during the hearings. Maternal grandfather presented considerable testimony regarding mother's tendency to move whenever she faces obstacles in her personal life. Maternal grandfather stated that D'Aliyah has attended four different school districts during the course of her life. Donavan has only attended the New Castle Area School District and Casan is currently in preschool.

Maternal grandfather proposes that the court direct mother to return to New Castle so that the minor children can continue in their currently scholastic placements. However, the court views this proposal to be completely unrealistic given the fact that mother moved more than six months ago and is established in her current residence.

Alternatively, if mother's request to relocate is denied, and the children remain with maternal grandfather, they may ultimately have to change school districts because maternal grandfather resides in the Mohawk Area School District. While these proceedings have been pending, the New Castle Area School District permitted the children to continue to attend school in its district because the disposition of the children's residence was uncertain.

Maternal grandfather also raised serious concerns about the fact that mother will have to place two of the minor children in daycare while she works and attends school. Maternal grandfather argued that, given mother's schedule, on some days, the children may be in daycare for nine hours. While the court would prefer that the children be cared for in a familiar setting, the court understands that

daycare may be the only viable option for some parents. Additionally, maternal grandfather permitted mother to maintain custody of Lynniah, and she has attended daycare for several months, without issue.

Given maternal grandfather's extensive testimony regarding his desire to care for the minor children and his extensive support system, the court believes that mother and maternal grandfather should overcome the differences bred by this litigation and work together to care for the minor children.

(3) The feasibility of preserving the relationship between the non-relocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

Under the prior custody orders, maternal grandfather enjoyed partial custody as agreed upon by the parties. Mother and maternal grandfather both stated that maternal grandfather had a liberal visitation schedule and that mother rarely denied his requests to see the minor children. Given the close proximate between maternal grandfather's residence and mother's current residence, the court sees no reason why this arrangement could not continue.

With respect to Lewis Clinkscale's ability to effectuate a partial custody schedule with Lynniah, for the same reasons set forth above, the court does not believe mother's relocation creates a barrier to father exercising custody.

(4) The child's preference, taking into consideration the age and maturity of the child.

The preferences of the children were not presented to the court given their young age.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

Maternal grandfather and Lewis Clinkscale both believe that mother's desire to relocate was in response to Lew Clinkscale being awarded partial custody of Lynniah. Maternal grandfather stated that, both he and mother had serious concerns about Lewis Clinkscale becoming involved in Lynniah's life because he has a prior criminal conviction from the state of Florida. Lewis Clinkscale completed all of the statutory requirements necessary prior to being awarded custody by this court, but mother's concerns resonated even after the court determined that Lewis Clinkscale was not a threat to his daughter.

The court believes that his argument has merit. However, since moving, mother has demonstrated an ability to communicate with Lewis Clinkscale and has not attempted to prevent Lewis Clinkscale from visiting with Lynniah. The court hopes that any concerns mother has previously fostered are now diminished, and that mother can continue to communicate appropriate for their mutual benefit as well as their child's benefit.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

Mother stated that her move to Campbell, Ohio was prompted by the fact that she obtained employment in the area. Prior to mother's relocation, mother was unemployed for a period of six months. Additionally, mother's relocation enabled mother to attend classes part-time at Youngstown State University without a long commute. Mother acknowledged that when she is working or at school the children will have to attend day-care if they are not in school themselves, but mother testified that by relocating, she can work and attend school while maximizing her time with the minor children. If mother stayed in New Castle, mother would face an hour commute to school on top of a considerable commute to work. The court finds that mother's relocation alleviates a lot of stress mother would otherwise incur, while giving mother the ability to spend more time with her children. These factors are clearly an enhancement to mother's quality of life.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

The court believes that mother's proposed relocation will benefit the minor children because it will enable the minor children to resume the lifestyle previously enjoyed by the children with mother as their primary caregiver. Maternal grandfather has done an exceptional job caring for the minor children will mother's request to relocate was pending, but the court cannot ignore the fact that mother has been the primary caregiver for all the children since their birth.

Additionally, mother's relocation will not interfere with maternal grandfather's ability to maintain his relationship with the minor children, nor will it interfere with Lewis Clinkscale's ability to maintain his relationship with Lynniah.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

As previously stated, mother's motivation in moving was to minimize her commute while she worked and attended school. Mother stated that her move enables her to spend as much time as possible caring for the minor children in light of her work and school schedule.

Maternal grandfather and Lewis Clinkscale oppose the relocation because they are concerned that mother has a history of moving. Maternal grandfather and Lewis Clinkscale believe that mother's pattern of relocation inhibits the children's need for stability and continuity.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

The court was not presented with any allegations of abuse committed by the parties or sustained by the children. This factor shall not be incorporated by the court in its analysis.

(10) Any other factor affecting the best interest of the child.

The court cannot complete its discussion without

addressing mother's attempt to relocate with the minor children without the consent of the parties or permission of the court. On one hand, mother's relocation is not drastic. Furthermore, after a full hearing, the court can reasonably conclude that mother's relocation will not substantially impact the custody rights of the non-relocating parties. However, mother's failure to properly communicate her intentions with maternal grandfather and Lewis Clinkscale has unnecessarily upset the children's lives for the past six months. The court's June 17, 2014 order, granting maternal grandfather temporary custody was not an attempt to punish mother for failing to comply with Pennsylvania's relocation statute, but rather an attempt to ensure that the children's best interests would be served by permitting them to move to Campbell, Ohio with mother. The court in good consciousness cannot reach such a conclusion without an agreement by all parties or a full evidentiary hearing.

After thoroughly reviewing all the testimony and evidence presented, the court concludes that it is appropriate to grant mother's petition to relocate. Consistent with this opinion, the court will enter the following order of court:

## ORDER OF COURT

And now, this 2nd day of January, 2015, this matter being before the court for a hearing mother's petition to relocate, with the maternal grandfather, Clint Robinson, appearing and being represented by Susan M. Papa, Esquire, the natural mother, Angel Whetzel, appearing and being represented by Bradley G. Olson, Jr., Esquire,

the natural father at Case No. 10671 of 2012, C.A., Lewis Clinkscale, appearing and being represented by William M. Panella, Esquire, and with Danelle M. Whetzle, not appearing, and consistent with the attached opinion, the court hereby orders and decrees as follows:

1. Mother's petition to relocate, filed on September 10, 2014 is granted.

2. The court finds that mother's request to relocate with the minor children is in the children's best interests, and that the relocation will not result in a substantial impairment to the interested parties' partial custody rights.

3. Mother is therefore permitted to relocate to Campbell, Mahoning County, Ohio with the minor children, Lynniah Clinkscale, born March 27, 2012; Casen Clark, born September 6, 2009; Donovan Whetzel, born October 20, 2006; and D'Aliyah Whetzel, born September 24, 2001.

4. Pursuant to the agreement of the parties, maternal grandfather, Clint Robinson the minor child, is awarded primary custody of the minor child, Chantel Searcy, born November 26, 1996.

5. The temporary custody order entered on June 17, 2014 is hereby vacated.

6. All custody orders entered prior to June 17, 2014 are hereby reinstated and reaffirmed.

7. A Review conference shall be scheduled upon motion of any interested party.

8. The prothonotary shall properly serve notice of this

order of court and opinion upon counsel of record for the parties and upon any unrepresented party at their last known address as contained in the court's file.