

E.D., Appellee

v.

M.P., Appellant.

Superior Court of Pennsylvania.

Submitted Sept. 12, 2011.

Filed Nov. 9, 2011.

Melanie D. Naro, Dunmore, for appellant.

Robert J. Hollister, Montrose, for appellee.

BEFORE: DONOHUE, LAZARUS and FITZGERALD*, JJ.

---

* Former Justice specially assigned to the Superior Court.

OPINION BY DONOHUE, J.:

Appellant, M.P. ("Mother"), appeals from the order entered on May 6, 2011 granting permission for Appellee, E.D. ("Father"), to move from Susquehanna County, Pennsylvania, to Barton, New York, with the parties' male child, D.C.D., ("Child"), and entering a revised custody schedule. This appeal requires consideration of the procedures and legal standards set forth in the newly enacted Child Custody Act, 23 Pa.C.S.A. §§ 5321 *et seq.* (sometimes referred to as the "Act"). For the reasons that follow, we vacate the trial court's order and remand this case to the trial court for further proceedings consistent with this decision.

Child was born in October 2007. After the separation of Mother and Father, by order entered April 30, 2009, the trial court awarded primary physical custody of Child to Father, and partial custody and visitation to Mother from noon each Wednesday until noon each Friday. On January 25, 2011, Father filed a Petition for Special Relief seeking permission to relocate with Child to Barton, New York to move in with his girlfriend, Meaggen Kenyon ("Kenyon"). According to his Petition, Father desires to move to Barton to obtain an advancement in his employment with Caliber Casings, a company in the gas exploration business. On the same day (January 25, 2011), the trial court issued an order that included, *inter alia,* a rule to show cause on Mother why the requested relief should not be granted. In addition, the trial court's order granted Father leave to relocate immediately to Barton and scheduled an evidentiary hearing for May 2, 2011. On February 11, 2011, Mother filed an answer to Father's petition, in which she opposed the relocation. Mother also filed a counterclaim seeking primary physical custody of Child.

At the evidentiary hearing on May 2, 2011, Father and Mother each testified. Father also presented the testimony of his mother and Mother presented the testimony of her father. By an Opinion and Order dated May 3, 2011 and entered on May 6, 2011, the trial court granted permission for Father to relocate to Barton with Child. The trial court set forth a revised custody schedule, pursuant to which Mother would have partial physical custody of Child every other weekend from Friday at 4:30 p.m. until Sunday at 6:00 p.m., and a longer three-day period on weekends when Child has a day off from school on a Friday or a Monday. Mother also received partial physical custody for three additional five-day periods during the summer months and on alternate holidays.

In support of these decisions, the trial court found as follows:

The father now wishes to relocate to the area of Barton, New York in order to obtain an advancement of his employment with Caliber Casings, a company involved in the gas exploration and development field. He has been employed with the company for approximately six (6) months and if he obtains a promotion his hourly rate will increase by about $3.00. He is currently involved with [Kenyon] who also is employed primarily during the daytime hours. He desires to remove himself and the child, [Child], to the home of [Kenyon], a three (3) bedroom home located in Barton, New York. Currently, he resides with his brother and sister-in-law here in Susquehanna County. He has had primary physical custody of [Child] since the filing of the [trial court's] Order of April 30, 2009.

On the other hand, [Mother] continues to reside in the area of Susquehanna County and subsequent to the Order of April 30th, 2009 she has obtained differ-

ent employment and no longer is locked into working on weekends as she had been prior to the time of the Order of April 30, 2009. She generally works at a bar/establishment in Montrose, Pennsylvania. She is opposed to the relocation in that it would be further [sic] away and it might affect her ability to have partial custody and visitation with her son on a weekly basis.

## DISCUSSION

We must consider whether or not the proposed relocation would be in the best interest of [Child]. We specifically find that the move would benefit [Child] in that he has a good relationship with his father as well as with [Kenyon]. The move to Barton, New York[,] would mean an increase in pay for [Father] and as such could provide an enhanced lifestyle for [Child].

Secondly, partial custody and visitation of the child with [Mother] could be easily facilitated and enhanced with the schedule to be better than the two (2) days per week which has been enjoyed by herself, in other words[,] alternative partial custody and visitation would allow her to maintain a good continued relationship with her son, [Child].

Neither party is exhibiting any ill motive for desiring the move to Barton, New York on behalf of the father and opposing the move by the mother, each having exhibited to the [c]ourt good cogent reasons for their opinions.

Inasmuch as the child has continually resided with [Father] for the last two (2) years[,] we find that he has been the primary care giver of the subject child and that primary physical custody should remain with him.

Lastly, we are not totally convinced that the other son of [Mother], ["Q."], is wholly without aggression issues, despite some evaluation and counseling which has been ongoing. It would be better if the boys enjoy some quality time together than be engaged in aggressive behavior initiated by [Q.] upon [Child].

Trial Court Opinion and Order, 5/6/11, at 1–3.

On June 6, 2011, Mother filed a timely notice of appeal in which she raises six issues for our consideration and review:

1. Whether the trial court erred and abused its discretion in failing to deny Father's Petition for Relocation for failure to comply with the mandatory provisions of 23 Pa. C.S.A. § 5337?

2. Whether the trial court erred and abused its discretion in allowing Father to relocate with the minor child and whether it applied the incorrect standard in deciding that the relocation would provide a benefit to the minor child?

3. Whether the trial court erred in modifying Mother's custody time as a realistic alternative custody schedule?

4. Whether the trial court erred in failing to appropriately investigate [Kenyon], who was not present nor testified [sic] at the relocation/custody proceeding?

5. Whether the trial court erred and abused its discretion in failing to consider all factors set forth in 23 Pa.C.S.A. § 5328 [1] with respect to Mother's counterclaim request for custody?

6. Whether the trial court erred in finding that the past aggression issues of Mother's older son (the instant minor child's half-sibling) is a compelling factor to negate the poli-

cy of this Commonwealth that siblings should be raised together?

[1] The statute was inadvertently referred to in the Concise Statement of Issues Complained of on Appeal as § 5528 instead of the correct section, 5328.

Mother's Brief, at 5 (footnote in original).

Our scope and standard of review regarding child custody matters is as follows:

[O]ur scope is of the broadest type and our standard is abuse of discretion. This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*A.D. v. M.A.B.*, 989 A.2d 32, 35–36 (Pa.Super.2010) (citations and quotation marks omitted).

Before addressing the issues Mother raises on appeal, we must first determine what statutory law to apply in this case. On November 23, 2010, the Pennsylvania legislature enacted the Child Custody Act, Act No. 112 of 2010. The text of the session law provides that the new law "shall take effect in 60 days," *i.e.*, on January 24, 2011, and further states in its section 4 that "a proceeding under the former provisions of 23 Pa.C.S. Ch. 53 which was commenced before the effective date of this section shall be governed by the law in effect at the time the proceeding was initiated." 2010 Pa. Legis. Serv. Act 2010–112, §§ 4–5 (H.B.1639) (Purdon's).

This latter directive is susceptible to at least two interpretations, depending upon the meaning assigned to the term "proceeding." If a "proceeding" refers to the entirety of a custody action, *i.e.*, from the initial filing of a request for custody and including all subsequently decided issues (*e.g.*, requests for relocation, modification, and enforcement), then the directive would require the application of the provisions of the former Child Custody Act [23 Pa. C.S.A. §§ 5301–5315, *repealed* ] for any custody case filed prior to January 24, 2011. If, on the other hand, a "proceeding" is distinguished from a custody "action," such that various "proceedings" (*e.g.*, for relocation, modification, and enforcement) take place within the context of a custody "action," then all such proceedings initiated after January 24, 2011 would be governed by the new Act—even if the original custody action was filed prior to its January 24, 2011 effective date. We note that the new Act does not expressly define the term "proceeding." To the contrary, it appears to use the terms "action," "proceeding," and "matter" interchangeably. See, e.g., 23 Pa.C.S.A. § 5323 ("an action under this chapter"); § 5327 ("any action regarding the custody of the child"); § 5331 ("a contested custody proceeding"); § 5335 ("the custody proceedings"); § 5321 ("any child custody matter"); § 5340 ("a child custody matter").

■ The object of statutory interpretation is to ascertain and effectuate the intent of the legislature. 1 Pa.C.S.A § 1921. We must assume that the legislature did not intend an absurd or unreasonable result, and in this regard we may consider the practical consequences of a particular interpretation. *Id.* at § 1922; *Commonwealth v. Diakatos*, 708 A.2d 510, 512

(Pa.Super.1998). With these principles in mind, in our view the legislature intended to distinguish between an "action" for custody and subsequent "proceedings" in connection therewith. This interpretation provides for the broadest possible application of the procedures and legal standards in the new Act. Under the alternative interpretation, the provisions of the old Act (repealed under section 2 of the new Act) would continue to apply to all aspects of every custody action filed before January 24, 2011—and would continue to apply in those actions for many years into the future, an absurd and unreasonable result. Because in our view the legislature intended for the provisions of the new Act to apply to all matters relating to child custody after the Act's effective date, the new Act applies to all custody proceedings commenced after January 24, 2011.

Because Father initiated his relocation request after the effective date of the new Act and Mother's request for modification of the custody order followed, the provisions of the new Child Custody Act apply here. As such, our analysis of the issues presented here begins with section 5337 [1]

1. Section 5337 provides in relevant part as follows:

§ 5337. Relocation

\* \* \*

(c) Notice.—

(1) The party proposing the relocation shall notify every other individual who has custody rights to the child.

(2) Notice, sent by certified mail, return receipt requested, shall be given no later than:

(i) the 60th day before the date of the proposed relocation or;

(ii) the tenth day after the date that the individual knows of the relocation if:

(A) the individual did not know and could not reasonably have known of the relocation in sufficient time to comply with the 60–day notice and

(B) it is not reasonably possible to delay the date of relocation so as to comply with the 60–day notice.

(3) Except as provided by section 5336 (relating to access to records and information), the following information, if available, must be included with the notice of the proposed relocation:

(i) The address of the intended new residence.

(ii) The mailing address, if not the same as the address of the intended new residence.

(iii) Names and ages of the individuals in the new residence, including individuals who intend to live in the new residence.

(iv) The home telephone number of the intended new residence, if available.

(v) The name of the new school district and school.

(vi) The date of the proposed relocation.

(vii) The reasons for the proposed relocation.

(viii) A proposal for a revised custody schedule.

(ix) Any other information which the party proposing the relocation deems appropriate.

(x) A counter-affidavit as provided under subsection (d)(1) which can be used to object to the proposed relocation and the modification of a custody order.

(xi) A warning to the nonrelocating party that if the nonrelocating party does not file with the court an objection to the proposed relocation within 30 days after receipt of the notice, that party shall be foreclosed from objecting to the relocation.

(4) If any of the information set forth in paragraph (3) is not known when the notice is sent but is later made known to the party proposing the relocation, then that party shall promptly inform every individual who received notice under this subsection.

(d) Objection to proposed relocation.—

(1) A party entitled to receive notice may file with the court an objection to the proposed relocation and seek a temporary or permanent order to prevent the relocation. The nonrelocating party shall have the opportunity to indicate whether he objects to relocation or not and whether he objects to modification of the custody order or not. If the party objects to either relocation or modification of the custody order, a hearing shall be held as provided in subsection (g)(1). The objection shall be made by completing and

returning to the court a counter-affidavit, which shall be verified subject to penalties under 18 Pa.C.S. § 4904 (relating to unsworn falsification to authorities), in substantially the following form:

\* \* \*

(2) An objection made under this subsection shall be filed with the court within 30 days of receipt of the proposed relocation notice and served on the other party by certified mail, return receipt requested.

(3) If notice of the proposed relocation has been properly given and no objection to the proposed relocation has been filed in court, then it shall be presumed that the nonrelocating party has consented to the proposed relocation.

(4) If a party who has been given proper notice does not file with the court an objection to the relocation within 30 days after receipt of the notice but later petitions the court for review of the custodial arrangements, the court shall not accept testimony challenging the relocation.

\* \* \*

**(f) Modification of custody order.**—If a counter-affidavit regarding relocation is filed with the court which indicates the nonrelocating party both has no objection to the proposed relocation and no objection to the modification of the custody order consistent with the proposal for revised custody schedule, the court may modify the existing custody order by approving the proposal for revised custody schedule submitted under subsection (c)(3)(viii), and shall specify the method by which its future modification can be made if desired by either party. If a counter-affidavit regarding relocation is filed with the court which indicates that the nonrelocating party objects either to the proposed relocation or to the modification of the custody order consistent with the proposal for revised custody schedule, the court shall modify the existing custody order only after holding a hearing to establish the terms and conditions of the order pursuant to the relocation indicating the rights, if any, of the nonrelocating parties.

**(g) Hearing.**—

(1) Except as set forth in paragraph (3), the court shall hold an expedited full hearing on the proposed relocation after a timely objection has been filed and before the relocation occurs.

(2) Except as set forth in paragraph (3), the court may, on its own motion, hold an expedited full hearing on the proposed relocation before the relocation occurs.

(3) Notwithstanding paragraphs (1) and (2), if the court finds that exigent circumstances exist, the court may approve the relocation pending an expedited full hearing.

(4) If the court approves the proposed relocation, it shall:

(i) modify any existing custody order; or

(ii) establish the terms and conditions of a custody order.

**(h) Relocation factors.**—In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

of the new Act, which sets forth the procedures and standards for relocation requests. With respect to procedural changes, section 5337 eliminates the petition-and-answer protocol utilized in prior practice. The party seeking to relocate does not make an initial filing with the trial court, but rather sends by certified mail to every other party with custody rights a notice in accordance with subsection 5337(c). In addition to the other information listed therein, a subsection 5337(c) notice must contain (1) a proposed revised custody schedule, and (2) a counter-affidavit in the form set forth in subsection (d). A party receiving a 5337(c) notice who objects either to the relocation or to the terms of the proposed revised custody schedule must complete the counter-affidavit included in the notice and file it with the trial court within thirty days. When the trial court receives a counter-affidavit containing an objection either to the relocation or to the proposed revised custody schedule, pursuant to section 5337(g) it must hold an expedited full hearing before the relocation occurs, unless it finds that exigent circumstances require approval of the relocation prior to an expedited full hearing.

Section 5337 also alters the legal standards that a trial court must consider when ruling on a request to relocate. Under prior practice, trial courts considered relocation requests based upon the three-factor test set forth in *Gruber v. Gruber*, 400 Pa.Super. 174, 583 A.2d 434, 439 (1990). Under the Child Custody Act, however, trial courts must consider the ten factors listed in subsection 5337(h). In particular, while the *Gruber* test required consideration generally of the "potential advantages of the proposed move and the likelihood that the move would substantially improve the quality of life for the custodial parent and the children," *Gruber*, 583 A.2d at 439, subsection 5337(h) sets forth a number of specific factors intended to isolate and focus this important inquiry.

The Child Custody Act also implements changes to requests to modify existing custody orders. Section 5338 provides that, upon petition, a trial court may modify a custody order if it serves the best interests of the child. 23 Pa.C.S.A. § 5338. Section 5328(a)[2] in turn sets forth a list of sixteen

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

(i) **Burden of proof.**—

(1) The party proposing the relocation has the burden of establishing that the relocation will serve the best interest of the child as shown under the factors set forth in subsection (h).

(2) Each party has the burden of establishing the integrity of that party's motives in either seeking the relocation or seeking to prevent the relocation.

\* \* \*

(*l*) **Effect of relocation prior to hearing.**— If a party relocates with the child prior to a full expedited hearing, the court shall not confer any presumption in favor of the relocation.

23 Pa.C.S.A. § 5337.

2. **§ 5328. Factors to consider when awarding custody**

(a) **Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

factors that must be considered in a best interests of the child analysis in making any custody determination. 23 Pa.C.S.A. § 5328(a). Accordingly, when a party files a petition for modification of a custody order, the trial court must perform a 'best interests of the child' analysis considering all of the section 5328(a) factors.

■ We now turn to the specific issues Mother raises in this appeal. For her first issue on appeal, Mother contends that Father failed to provide her with a notice in accordance with subsection 5337(c). While it is true that Father did not provide Mother with a subsection 5337(c) notice, Mother waived this issue on appeal because she failed to raise it before the trial court. See Pa.R.A.P. 302. In this regard, we note that neither the parties nor the trial court complied with any of the procedural requirements of section 5337 during the pendency of this case below. Father failed to commence his relocation action by sending a subsection 5337(c) notice to Mother. Mother failed to file a counter-affidavit in accordance with subsection 5337(d). And the trial court granted Father's request to relocate before conducting a full expedited hearing as required by section 5337(g), even though Father did not allege the existence of any exigent circumstances and the trial court found none.[3] Because neither party objected to any of these procedural failures, however, we must treat all of them as waived.

■ For her second, third, and fourth issues raised on appeal, Mother argues that the trial court failed to consider ade-

(3) The parental duties performed by each party on behalf of the child.
(4) The need for stability and continuity in the child's education, family life and community life.
(5) The availability of extended family.
(6) The child's sibling relationships.
(7) The well-reasoned preference of the child, based on the child's maturity and judgment.
(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.
(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.
(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.
(11) The proximity of the residences of the parties.
(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.
(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.
(14) The history of drug or alcohol abuse of a party or member of a party's household.
(15) The mental and physical condition of a party or member of a party's household.
(16) Any other relevant factor.
23 Pa.C.S.A. § 5328(a).

3. This error, namely the trial court's grant of Father's request to relocate on the same day it was filed despite the absence of any finding of exigent circumstances, also violated the procedural requirements in place prior to enactment of the Child Custody Act. See Plowman v. Plowman, 409 Pa.Super. 143, 597 A.2d 701, 706 (1991) ("We therefore hold that where either parent files a petition which raises the issue of whether it is in the best interest of the child to move with the custodial parent outside of the jurisdiction, a hearing must be held either before the move, or under exigent circumstances, within a reasonable time thereafter.").

On remand, we remind the trial court that subsection 5337(l) provides that Father is not entitled to any presumption in his favor as a result of the trial court's erroneous decision to permit relocation prior to an evidentiary hearing.

quately the ten factors for relocation in section 5337(h). We agree. Section 5337(h) mandates that the trial court *shall* consider all of the factors listed therein, giving weighted consideration to those factors affecting the safety of the child. 23 Pa.C.S.A. § 5337(h). In this case, it cannot be ascertained from the record on appeal whether the trial court considered all of the section 5337(h) factors in reaching its decision. To the extent that the trial court did consider these factors, it did so in a cursory manner without references to the record or explanations for its conclusions.

For example, factor (1) required the trial court to consider the "nature, quality, extent of involvement and duration of [Child's] relationship" with Kenyon, a significant new person in Child's life.[4] *Id.* at § 5337(h)(1). And factor (2) required the trial court to determine the "likely impact the relocation will have on [Child's] physical, educational and emotional development," taking into account Child's age, developmental stage, and needs. *Id.* at § 5337(h)(2). To the extent that the trial court addressed these factors at all,[5] it appears to have done so in a single sentence, namely that "[w]e specifically find that the move would benefit [Child] in that he has a good relationship with his father as well as with [Kenyon]." Trial Court Opinion, 5/6/11, at 3. Based upon our review of the record, we are aware that there is some evidence therein to support the trial court's observations regarding Child's relationships with Father and Kenyon. But it is not this Court's proper function to scour the record in attempts to intuit the reasons supporting the trial court's findings. Effective appellate review requires the trial court to consider each of the factors set forth in section 5337(h), and to state both its reasoning and conclusions on the record for our review.

Similarly, factor (3) requires the trial court to consider the "feasibility of preserving the relationship between the non-relocating party and [Child] through suitable custody arrangements." 23 Pa.C.S.A. § 5337(h)(3). The trial court addressed this factor as follows:

> Secondly, partial custody and visitation of the child with [Mother] could be easily facilitated and enhanced with the schedule to be better than the two (2) days per week which has been enjoyed by herself, in other words[,] alternative partial custody and visitation would allow her to maintain a good continued relationship with her son, [Child].

Trial Court Opinion, 5/6/11, at 3. We note that the trial court made significant modifications to the existing custody schedule, including reducing Mother's regular contact with Child from two days every week to two days every *other* week, but adding more time in the summer and alternate holidays. Unfortunately, the trial court provides no explanation for its decision that this new schedule, which Mother opposes, is better than the previous schedule. As such, we cannot assess the merits of the trial court's conclusion that the new

---

4. In addition, because the request for relocation and modification of the custody schedule added a new member to Child's household (Kenyon), the trial court was required (but failed) to ascertain whether she has ever been convicted of or plead guilty or no contest to any of the offenses listed in section 5329(a) of the new Child Custody Act.

5. In this regard, we note that the trial court separately addressed the potential financial benefits of the move for Child and Father. Trial Court Opinion, 5/6/11, at 2–3. Factors (1) and (2) do not involve considerations of financial benefits—which are addressed instead in factors (6) and (7).

custody schedule permits Mother to "maintain a good relationship" with Child.

∎ For her fifth issue on appeal, Mother contends that the trial court failed to consider the factors set forth in section 5328 of the new Child Custody Act when considering Mother's counterclaim for custody of Child.[6] Subsection 5328(a) lists sixteen factors that a trial court must consider when performing a best interests of the child analysis when ordering any form of custody. 23 Pa.C.S.A. § 5328(a). In this case, the trial court disposed of Mother's counterclaim for custody by stating that "[i]nasmuch as [Child] has continually resided with [Father] for the last two (2) years we find that he has been the primary care giver of [Child] and that primary physical custody should remain with him." Trial Court Opinion, 5/6/11, at 3. On remand, the trial court should conduct a thorough analysis based upon the factors set forth in subsection 5328(a).

For her sixth and final issue on appeal, Mother contends that the trial court erred in concluding that prior aggressive acts by Mother's older son towards Child was a compelling factor in the decision not to award custody of Child to Mother. In this regard, we first note that, on remand, the trial court must evaluate the nature of the relationship between Mother's older son and Child in its analysis pursuant to subsection 5328(a), including both factors (2) (continued risk of harm to the Child) and (6) (sibling relationships). Also, contrary

to Mother's request that we do so here, we will not second guess the trial court's decisions regarding the weight of the evidence and/or its credibility assessments of the witnesses with respect to the potential continuing threat that Mother's older child may pose to Child. *King v. King,* 889 A.2d 630, 632 (Pa.Super.2005) ("It is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, given [*sic*] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion in awarding custody to the prevailing party.") (quoting *Hanson v. Hanson,* 878 A.2d 127, 129 (Pa.Super.2005)).

For these reasons, we vacate the trial court's order and remand for further proceedings consistent with this decision. Jurisdiction relinquished.

---

**6.** Given the parties' failure to follow the procedural rules set forth in section 5337, we must treat Mother's counterclaim for custody as a *request by petition for modification of the original custody order* (dated April 30, 2009) pursuant to 23 Pa.C.S.A. 5338(a) ("Upon petition, a court may modify a custody order to serve the best interests of the child.").

In accordance with proper practice under section 5337, where the nonrelocating party merely objects to modification of the existing

custody order in his/her section 5337(d) counter-affidavit (*i.e.,* in response to the proposed revised custody schedule in the section 5337(c) notice, *see* subsection 5337(c)(viii)), the trial court will not perform a best interests of the child analysis pursuant to the section 5328(a) factors, but will instead decide whether the existing custody order should be modified pursuant to the section 5337(h) factors.