J-A01045-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| A.B., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| K.K., | |
| Appellant | No. 1423 WDA 2014 |

Appeal from the Order entered August 22, 2014,
in the Court of Common Pleas of Blair County,
Civil Division, at No(s): 2011 GN 3875

BEFORE:  FORD ELLIOTT, P.J.E., DONOHUE, and ALLEN, JJ.

MEMORANDUM BY ALLEN, J.:                     **FILED FEBRUARY 18, 2015**

K.K. ("Mother") appeals from the order dated August 20, 2014, and filed on August 22, 2014, which awarded A.B. ("Father") and Mother shared physical and legal custody of the parties' daughter, K.B. ("Child") (born in January of 2008).  The order also granted Mother's petition to relocate to Altoona, Pennsylvania, and denied Father's petition for modification seeking primary legal and physical custody of Child in Texas.  We affirm.

We adopt the factual and procedural history as recounted by the trial court:

> Mother and Father are the parents of [Child].  Mother currently lives with her great-grandparents in Cambria County, Pennsylvania and is petitioning for relocation to Altoona, [Pennsylvania].  Father lives in Texas and is petitioning for relocation there.  Neither party is married but both are engaged. Mother works at Applebee's and is going to nursing school.  Her fiancé works at Applebee's and has a degree in biology from

Penn State. He is looking for a job as an inspector of mines. He has a house in Altoona where Mother wants to move to live together with him, their daughter, and [Child]. Father and his fiancée are teachers. Father teaches [fifth] grade in Texas, where he moved to get a teaching job. He lives with his fiancée and her two sons, ages [eight] and [six]. His father lives in Texas as well. Mother's large extended family and the rest of Father's extended family lives in the Altoona, [Pennsylvania] (Blair County) area. [Child] is close emotionally to both Mother and Father's extended families. [Child] is [six] years old and will enter first grade this fall. The testimony revealed that neither Mother's fiancé nor Father's fiancé have any criminal record or any other thing about them that would be any danger to [Child]. They both testified credibly that they had a close relationship to [Child] and would promote her welfare. The parties communicate sufficiently well for the [trial c]ourt to enter a shared custody order. Neither party alleges current drug or alcohol abuse by the other or a member of their household. There was testimony that Mother's paramour had a DUI in 2006; however, the testimony also was that he no longer drinks. There was no current allegation of physical abuse by any party and no relevant evidence of past abuse. The testimony revealed that neither parent is attempting to turn [Child] against the other parent.

Mother testified that Father swore at her on the telephone at one point but objectively the level of conflict between the parties is not extremely high. Both parents have performed parental caretaking duties for [Child], and both are capable of doing so. Mother testified credibly that she has been [Child]'s primary caretaker. Both parties allow [Child] to contact (call) the other when [Child] is with them, although Mother alleges that Father monitors [Child]'s calls and that sometimes [Child] is not available when she calls. Father restricted [Child] to one call per day from Mother's family after multiple members of her large extended family called [Child] each day. This restriction was not inappropriate in light of the testimony about Mother's family in terms of how many calls would have been placed absent any restriction. [Child] was interviewed, but at age six, her testimony cannot be taken as mature or well-reasoned. She said she wanted to live with

her Mother although she loved her father and wanted to visit him in Texas. Her testimony bordered on the edge of being incompetent because of immaturity. There was testimony of Father's fiancé's son having a mild emotional condition that would not affect [Child]. Otherwise, the mental and physical health of the parties and their household members is good and is not a factor in this case.

Trial Court Opinion, 9/26/14, at 1-3 (unpaginated).

On November 3, 2011, Father filed a *pro se* custody complaint. On January 12, 2012, following a hearing, the trial court granted Mother and Father shared legal and physical custody of Child, and ordered that Child was to reside with Mother. On May 23, 2012, Father filed a petition for modification. The petition was subsequently withdrawn, and the trial court canceled the scheduled conference.

On February 25, 2013, Father filed another petition for modification. On April 23, 2013, the trial court ordered Mother and Father to share legal and physical custody of Child, with Child to reside with Mother in Ashville, Pennsylvania. The trial court also scheduled a "custody prehearing conference" for May 24, 2013, and a "custody evidentiary hearing" for August 23, 2013. Father moved to Texas and accepted a teaching position with the Copperas Cove Independent School District. Following the custody evidentiary hearing, on August 29, 2013, the trial court ordered that Mother and Father share physical and legal custody of Child, and that Child continue to reside with Mother. Additionally, the trial court ordered that any

transportation costs, and flights from Pennsylvania to Texas, primarily be paid by Father.

On May 7, 2014, Father filed a petition for modification seeking primary legal and physical custody, alleging that he had established permanency in Texas and had a permanent job teaching and a permanent home. A custody conciliation was held but the parties did not reach an agreement. On June 26, 2014, Father requested an evidentiary hearing. On August 1, 2014, Mother filed a petition to relocate to Altoona, Pennsylvania. Mother sought to live with her fiancé at his home in Altoona. On August 13, 2014, Father filed a counter affidavit to Mother's petition for relocation, requesting an evidentiary hearing.

A hearing convened on August 15, 2014. The following witnesses testified: Maria Zelenski, kindergarten teacher at Child's school; K.R., Father's fiancé; T.W., Maternal Grandmother; B.S., Mother's fiancé; C.K., Maternal Great-Grandmother; Father; and Mother. Child testified *in camera*. On August 22, 2014, the trial court ordered Mother and Father to share legal and physical custody of Child, granted Mother's petition for relocation to Altoona, Pennsylvania, and denied Father's petition. The August 22, 2014 order also directed that Child reside with Mother during the school year, and that Mother and Father share transportation costs of the flights from Pennsylvania to Texas.

Mother appealed. She presents this Court with two issues:

1. Whether the court erred and/or abused its discretion in drafting an Order so restrictive as to appear to be punitive, and allowing for [C]hild to miss school[?]

2. Whether the court erred in dividing the cost of transportation equally without any evidence regarding the ability of the parties to do so[?]

Mother's Brief at 6.

Initially, we note that Mother's second issue regarding transportation expenses is waived because Mother failed to raise this issue in her Pa.R.A.P. 1925(b) statement. **See** Pa.R.A.P. 1925(b)(vii).

With regard to Mother's first issue, we observe that as the hearing in this matter was held in August of 2014, the Child Custody Act ("Act"), 23 Pa.C.S.A. §§ 5321 to 5340, is applicable. **C.R.F. v. S.E.F.**, 45 A.3d 441, 445 (Pa. Super. 2012) (holding that, if the custody evidentiary proceeding commences on or after the effective date of the Act, *i.e.*, January 24, 2011, the provisions of the Act apply).

In custody cases, our standard of review is well-settled:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Id.* at 443 (citation omitted).

We have stated:

The discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (*quoting*

*Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

In *M.A.T. v. G.S.T.*, 989 A.2d 11 (Pa. Super. 2010) (*en banc*), we

observed:

Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

*Id.* at 18-19 (quotation and citations omitted).

With any custody case decided under the Act, the paramount concern is the best interests of the child. *See* 23 Pa.C.S.A. §§ 5328, 5338. Section 5338 of the Act provides that, upon petition, a trial court may modify a custody order if it serves the best interests of the child. 23 Pa.C.S.A. § 5338. Section 5328(a) of the Act, 23 Pa.C.S.A. § 5328(a), sets forth the

sixteen best interest factors that the trial court must consider.  *See E.D. v. M.P.*, 33 A.3d 73, 80-81, n.2 (Pa. Super. 2011).

Section 5328 of the Act provides:

**§ 5328.  Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child

adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328.[1]

Further, where a request for relocation of the child is involved, the trial court must consider the following ten relocation factors set forth within section 5337(h) of the Act:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

---

[1] Effective January 1, 2014, the statute was amended to include an additional factor at 23 Pa.C.S.A. § 5328(a)(2.1) (providing for consideration of child abuse and involvement with child protective services).

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(h); **see also E.D.** 33 A.3d at 81-82 ("Section 5337(h) mandates that the trial court *shall* consider all of the factors listed therein, giving weighted consideration to those factors affecting the safety of the child."). **Id.** at 81. Moreover, "[w]hen a custody dispute involves a request by a party to relocate, we have explained 'there is no black letter formula

that easily resolves relocation disputes; rather, custody disputes are delicate issues that must be handled on a case-by-case basis.'" ***C.M.K. v. K.E.M.***, 45 A.3d 417, 421 (Pa. Super. 2012), *quoting* **Baldwin v. Baldwin**, 710 A.2d 610, 614 (Pa. Super. 1998).

Section 5323 provides for the following types of awards:

**(a) Types of award.**—After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it is in the best interest of the child:

(1) Shared physical custody.

(2) Primary physical custody.

(3) Partial physical custody.

(4) Sole physical custody.

(5) Supervised physical custody.

(6) Shared legal custody.

(7) Sole legal custody.

23 Pa.C.S.A. § 5323.

In ***A.V. v. S.T.***, 87 A.3d 818 (Pa. Super. 2014), this Court explained:

"***All*** of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." ***J.R.M. v. J.E.A.***, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original). Section 5337(h) requires courts to consider all relocation factors. ***E.D.***, *supra* at 81. The record must be clear on appeal that the trial court considered all the factors. ***Id.***

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record or in open court or in a written opinion or order." 23 Pa.C.S.A. 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its

mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." ***C.B. v. J.B.***, 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, 620 Pa. 727, 70 A.3d 808 (2013). Section 5323(d) applies to cases involving custody and relocation. ***A.M.S. v. M.R.C.***, 70 A.3d 830, 835 (Pa. Super. 2013).

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." ***M.J.M. v. M.L.G.***, 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, 620 Pa. 710, 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). ***Id.***

***A.V.***, 87 A.3d at 822-23.

Upon careful review of the entire certified record, including the notes of testimony and applicable law, we conclude that the thorough opinion filed by the Honorable Elizabeth A. Doyle filed on August 22, 2014, as well as Judge Doyle's opinion pursuant to Pa.R.A.P. 1925(a) filed on September 26, 2014, address the issues raised by Mother and support the trial court's custodial determinations. Accordingly, we adopt and incorporate the August 22, 2014 and September 26, 2014 opinions of the trial court as our own.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/18/2015

IN THE COURT OF COMMON PLEAS OF BLAIR COUNTY, PENNSYLVANIA

A.B.
    PLAINTIFF,

V.                :        2011 GN 3875

K.K.
    DEFENDANT.

| | |
|---|---|
| ELIZABETH A. DOYLE | PRESIDING JUDGE |
| STEVEN PASSARELLO, ESQ. | COUNSEL FOR PLAINTIFF |
| SUSAN REA, ESQ. | COUNSEL FOR DEFENDANT |

### OPINION

AND NOW, this 21ˢᵗ day of August, 2014, this matter came before the Court on August 15, 2014 for Custody Evidentiary hearing. The matter is ripe for decision.

### Facts

Mother and Father are the parents of K.B, D.O.B. 1/14/2008. Mother currently lives with her great-grandparents in Cambria County, Pennsylvania and is petitioning for relocation to Altoona PA. Father lives in Texas and is petitioning for relocation there. Neither party is married but both are engaged. Mother works at Applebee's and is going to nursing school. Her fiancé works at Applebee's and has a degree in biology from Penn State. He is looking for a job as an inspector of mines. He has a house in Altoona where Mother wants to move to live together with him, their daughter together, and K.B. Father and his fiancée are teachers. Father teaches 5ᵗʰ grade in Texas, where he moved to get a

33

teaching job. He lives with his fiancée and her two sons, ages 8 and 6. His Father lives in Texas as well. Mother's large extended family and the rest of Father's extended family lives in the Altoona, PA (Blair County) area. The child is close emotionally to both Mother and Father's extended families. The child is 6 years old and will enter first grade this fall. The testimony revealed that neither Mother's fiancé or Father's fiancée have any criminal record or any other thing about them that would be any danger to the child. They both testified credibly that they had a close relationship to the child and would promote her welfare. The parties communicate sufficiently well for the Court to enter a shared custody order. Neither party alleges current drug or alcohol abuse by the other or a member of their household. There was testimony that Mother's paramour had a DUI in 2006; however, the testimony also was that he no longer drinks. There was no current allegation of physical abuse by any party and no relevant evidence of past abuse. The testimony revealed that neither parent is attempting to turn the child against the other parent. Mother testified that Father swore at her on the telephone at one point but objectively the level of conflict between the parties is not extremely high. Both parents have performed parental caretaking duties for the child, and both are capable of doing so. Mother testified credibly that she has been the child's primary caretaker. Both parties allow the child to contact (call) the other when the child is with them, although Mother alleges that Father monitors the child's calls and that sometimes the child

34

is not available when she calls. Father restricted the child to one call per day from Mother's family after multiple members of her large extended family called the child each day. This restriction was not inappropriate in light of the testimony about Mother's family in terms of how many calls would have been placed absent any restriction. The child was interviewed, but at age 6, her testimony cannot be taken as mature or well reasoned. She said she wanted to live with her Mother although she loved her Father and wanted to visit him in Texas. Her testimony bordered on the edge of being incompetent because of immaturity. There was testimony of Father's fiancée's son having a mild emotional condition that would not affect K.B. Otherwise, the mental and physical health of the parties and their household members is good and is not a factor in this case.

APPLICABLE LAW:

As always, our paramount concern in a case whether it involves custody or visitation is the best interest and permanent welfare of the children. Commonwealth ex rel Pierce v. Pierce, 493 Pa. 292, 426 A. 2d 555 (1981). Determination of the best interest of the child is based on consideration of all factors which legitimately have an effect upon a child's physical, intellectual, moral and spiritual well being. E.A.L. and J.L.L. v. L.J.W., 662 A.2d 1109 (Pa Super. 1955). In custody decisions, the trial court must consider the importance of continuality in a child's life and desirability of development of stable relationship with established

35

parental figures and known physical environment. <u>Wiseman v. Wall</u>, 718 A.2d 844 (Pa. Super. 1998)

The principles enunciated above are time honored in Pennsylvania law. More recently, however, because of the Pennsylvania's adoption of the new Child Custody Act at 23 Pa. C.S.A.§5328 (a), that act directs that when a party files a petition for custody, the trial court must perform a best interest of the child analysis considering all of the §5328 (a) factors. Those factors are as follows:

1)   Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

2)   The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

3)   The parental duties performed by each party on behalf of the child.

4)   The need for stability and continuity in the child's education, family life and community life.

5)   The availability of extended family.

6)   The child's sibling relationships.

36

7)  The well-reasoned preference of the child, based on the child's maturity and judgment.

8)  The attempts of a parent to turn the child against the other parent, except in the case of domestic violence where reasonable safety measures are necessary to protect the child from harm.

9)  Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

10) Which party is more likely to attend to the daily, physical, emotional, developmental, educational and special needs of the child.

11) The proximity of the residences of the parties.

12) Each party's ability to care for the child or ability to make appropriate child-care arrangements.

13) The level of conflict between the parties and willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness of inability to cooperate with that party.

14) The history of drug or alcohol abuse of a party or member of a party's household.

15) The mental and physical condition of a party or member of a party's household.

16) Any other relevant factor.

As the language of the Act suggests, these factors are not the only factors a Court may consider. However, they are to be included as part of the analysis.

Some of the factors are not relevant to the Court's analysis. Neither party alleges current drug or alcohol abuse (Factor 14) by the other or a member of their household. There was testimony that Mother's paramour had a DUI in 2006; however, the testimony also was that he no longer drinks. There was no current allegation of physical abuse (Factor 2) by any party and no relevant evidence of past abuse. Neither parent is attempting to turn the child against the other parent (Factor 8). The parents cooperate with one another sufficiently to make a shared custody order appropriate. Mother testified that Father swore at her on the telephone at one point but objectively the level of conflict between the parties is not extremely high. Both parents have performed parental caretaking duties for the child, and both are capable of doing so (Factor 3). Mother testified credibly that she has been the child's primary caretaker. Both parties allow the child to contact (call) the other (Factor 1) when the child is with them, although Mother alleges that Father monitors the child's calls and that sometimes the child is not available when she calls. Father restricted the child to one call per day from

38

Mother's family after multiple members of her large extended family called the child each day. This restriction was not inappropriate in light of the testimony about Mother's family in terms of how many calls would have been placed absent any restriction. The child was interviewed, (Factor 7) but at age 6, her testimony cannot be taken as mature or well reasoned. She said she wanted to live with her Mother although she loved her Father and wanted to visit him in Texas. Her testimony bordered on the edge of being incompetent because of immaturity. Factor 15 is mental and physical health of the parties or their household members and is not a factor in this case.

Proceeding with analysis of the remaining factors, Factor 3 is the need for stability and continuity in the child's life. Mother has been the child's primary caretaker. Although Mother has changed residences frequently in the last several years, she maintained her relationships with her family, which is large and close (both in the geographical and emotional sense) and fostered a relationship between the child and her extended family. At age six, the child is just beginning her education. She will be in first grade this fall. She is accustomed to going to school from her Mother's house, although that house and the school district will be different since Mother is relocating to Altoona to her fiancé's house. The testimony showed that Mother's large family is extremely involved with the child and that she recognizes them as a source of love and support. This adds stability to the child's life in the Blair County area.

39

Factor 5 is extended family. Both the Mother's extended family and most of the Father's extended family are in the Blair County area, although Father's father lives in Texas. The child has a relationship with Father's mother who lives in Pennsylvania. Factor 6 is siblings. The child has an infant younger sister at Mother's house. The testimony was that she is close to her younger sister and spends time with her, pretending to be "Mommy". Factor 9 is relationship with parent, which parent is more likely to maintain a loving, stable, consistent and nurturing relationship with the child. These parents are equally likely to do so. Factor 10 is daily needs. Both parents can provide those. Factor 11 is proximity of the residences of the parties. This is the difficulty in this case. Father relocated to Texas while Mother remains in Altoona. To maintain a bond with each parent the child must be afforded large blocks of time with each. There is no practical way for a Court to do that for a child of school age short of dividing the time between one parent in the school year and the other in school vacation times. Factor 12 is availability of care. Father will be fully available to care for the child in the summer time since he is a teacher and has that time period as vacation period. Mother would be working and/or going to school in the summer time. During the school year, Father would be somewhat more available for the child than Mother but would be dividing his time between the child, his fiancé, and her two sons. Mother's extended family and fiancé are available to care for the child in the school year when she is not available.

40

In addition to the custody factors, the Court must assess relocation factors in this case because each party requests relocation. Father lives in Texas and requests to relocate the child there. Mother lives in Asheville, PA and seeks to relocate the child to Altoona. The relocation factors are: **The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the children's life.**

Mother has been the child's primary caretaker although she loves her Father as well. She has a sibling with Mother. The majority of her extended family is in Blair County.

**The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, emotional and educational development.**

The child is 6 and is entering first grade. The relocation to Altoona will have a positive aspect of maintaining her relationship with her sister. Her primary caretaker, Mother, will be there during the potentially stressful first week of first grade. Relocation to Texas would remove the child from the majority of her extended family and make her one of three children of similar age (8, 6, and 6) in the household and the only girl instead of the oldest child with an infant same sex sibling.

41

The feasibility of preserving the relationship between the nonrelocating party and the children through suitable custody arrangements considering the logistics and financial circumstances of the parties.

The extreme distance between Blair County and Texas makes preserving the child's relationships difficult. The Court believes that its Order reflects a custody arrangement that takes into consideration the logistics and financial circumstances of the parties.

The children's preference, taking into consideration the age and maturity of the child.

At 6, the child is not sufficiently mature for the Court to fully consider her preference, but she stated a preference to live with Mother and visit Father.

Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

Relocation to Father's house would enhance the child's educational opportunities but she can get sufficient educational opportunities at Mother's. The child will receive an emotional benefit by being permitted to relocate with Mother to her fiancé's home.

42

**Whether the relocation will enhance the general quality of life for the children, including but not limited to, financial or emotional benefit or educational opportunity.**

Relocation to Father's home in Texas would lessen the child's stability and contact with extended family. Relocation with Mother to Mother's fiancé's home will promote closeness with the child's sister and maintain the extended family relationships better.

**The reasons and motivation of each party for seeking or opposing the relocation.**

Here, both parties are seeking relocation for good reasons and are not acting in bad faith. Father moved to Texas to get a teaching job, which he could not get in the Blair County area. Mother wants to relocate to live with her husband- to- be and their daughter together.

<u>Conclusion</u>

The Court entered its separate Custody Order placing the child with Mother during the school year and Father on vacation periods and in the summer after taking into account all the custody factors and all the relocation factors as applied to each relocation petition.

BY THE COURT:

_____ J.

43

OPINION PURSUANT TO RULE 1925
DATED SEPTEMBER 26, 2014