J-A18015-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| K.M.X. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| A.N.C. | : | No. 323 WDA 2020 |

Appeal from the Order Entered January 27, 2020
In the Court of Common Pleas of McKean County Civil Division at No(s):
No. 1019 CD 2018

BEFORE: BENDER, P.J.E., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED AUGUST 13, 2020**

K.M.X. (Father) appeals from the order, entered January 27, 2020, that awarded Father and A.N.C. (Mother) shared legal custody of the parties' son, D.M.D.C. (Child), born in March of 2017. The order also sets forth the physical custody arrangements, which are extensive due to the parties' present residences with Mother located in the state of Washington and Father living in Pennsylvania. After review, we affirm.

In its opinion and order issued on January 27, 2020, the trial court provided information on the procedural history of this case and a list of findings of fact. This matter began in Pennsylvania when Father filed a petition for contempt against Mother on December 27, 2018. A short time later, Father filed a petition for emergency custody. By that time, the trial court here assumed jurisdiction and deemed Father's filings to be a petition to modify custody. Mother responded by filing preliminary objections, asserting that

Washington, not Pennsylvania, had jurisdiction. After consultation with the court in Washington, that court relinquished jurisdiction and Mother's preliminary objections were dismissed. A conference and mediation ensued, ending without an agreement. Trial was held on November 22, 2019, and resulted in the opinion and order presently on appeal.

In its findings, the trial court stated that Father lived in Port Allegany, Pennsylvania, with his older son and Child, when Child is in his custody. Mother resided in Tacoma, Washington, with her maternal grandparents and Child, when Child is in her custody. The court noted that for a short time in 2018, she lived with Father and then in an apartment nearby. The trial court's opinion then set forth the following findings:

4. Child was born out of wedlock.

5. Under the current custody order dated December 29, 2017[,] the parties share legal custody[,] and physical custody is split between Mother and Father. Child is scheduled to live with Mother except when residing with Father. Father is permitted one full week with Child, per visit, upon giving advance notice of at least 30 days. Father is also to have Child from June 20th to August 15th, Father's Day, Thanksgiving in odd numbered years[,] Christmas in even numbered years and on Child's birthday in even numbered years. The parties have not been follow[ing] this parenting plan (court order) since at least April 2018.

6. Father is a disabled veteran. He receives monthly disability payments from the military. His monthly income is approximately $3,000.

7. Mother works at Johnny[']s at Fife. Her work hours are Wednesday/Thursday[]11 a.m. to 6 p.m., Friday 3 p.m. to 9 p.m.[,] Saturday and Sunday 8 a.m. to 3 p.m. Her monthly income is approximately $1,000.

8. Father was charged with negligent driving (DUI) in 2015.

9. Mother was charged with several motor vehicle violations in January 2018 including Driving Under the Influence of Alcohol. She was placed on electronic home monitoring with alcohol sensor for 15 days and ordered to pay fines and costs. She completed her sentence on April 30, 2019.

10. Mother and Father live approximately 2200 miles apart.

11. Mother has extended family living in and around Tacoma including her mother, a sister, a brother, grandparents and numerous nieces and nephews[.] Mother has a boyfriend with whom she does not live but occasionally spends overnights.

12. Mother appears to be in good physical and mental health. Mother has smoked marijuana and abused alcohol. She reports that she is no longer doing so. She is 27 years old.

13. Father has extended family living in and around Port Allegany including a brother and many nieces and nephews.

14. Father appears to be in good physical and mental health. Notwithstanding, Father has been diagnosed with PTSD. He receives treatment when needed from the Veterans Administration. He has used marijuana and abused alcohol. He states that he is no longer doing so. He is 40 years old.

15. Child has a paternal half-brother, [D.], age 11. Father and others report that Child and his half-b[r]other are very close.

16. Father had difficulty coping with life after leaving the military. He reports that he drank to excess, still to this day does not sleep well and has not been in a steady relationship. He left Washington to be near family in Pennsylvania.

17. Mother has not been without her own problems. Not until recently did she begin making wise decisions regarding her lifestyle. She was in an abusive relationship. She has used alcohol as a coping mechanism. She followed Father with Child to Pennsylvania with hope they could be a family for sake of Child. Regrettably[,] things did not work out and Mother chose to return to Washington.

J-A18015-20

Trial Court Opinion and Order (TCOO), 1/27/20, at 3-4.

In addition to stating its findings of fact and identifying a list of witnesses and exhibits presented at trial by the parties, the court considered all sixteen factors that are set forth at 23 Pa.C.S. § 5328(a).[1]  The court then concluded

---

[1] Specifically, 23 Pa.C.S. § 5328(a) states:

**(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

- 4 -

that "there is no compelling reason to award one parent substantially more custodial time than the other." TCOO at 12. In its order, the court directed each party to have custody of Child for ten-week periods until the time Child

_____

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

attains school age and, thereafter, they should comply with their 2017 parenting agreement. The court also allowed for either parent to travel to the custodial parent's home city and exercise partial custody for up to five days with a two-week notice given. Additionally, the court included in its order directions as to travel involving the exchange of custody and the cost of such travel. The order further included liberal arrangements for regular communication between Child and the non-custodial parent.

Father filed a timely notice of appeal and a concise statement of errors complained of on appeal containing nine alleged errors. However, Father's brief lists only the following three issues:

> Whether the trial court abused its discretion and erred as a matter of law by applying a policy of the trial court in favor of shared custody on a substantially equal basis absent evidence warranting deviation therefrom?
>
> Whether the trial court's findings of fact and conclusions regarding the sixteen custody factors were unreasonable in light of the evidence presented?
>
> Whether the trial court abused its discretion and erred as a matter of law in its application of the [sixteen] custody factors and in awarding physical custody in a manner that is not in the child's best interest?

Father's brief at 6-7.

We address Father's claims mindful of our well-settled standard of review.

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual

determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***V.B. v. J.E.B.***, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

Furthermore, we note that:

> The discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.
>
> ***Ketterer v. Seifert***, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting ***Jackson v. Beck***, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

***A.H. v. C.M.***, 58 A.3d 823, 825 (Pa. Super. 2012). Moreover, "[w]hen a trial court orders a form of custody, the best interest of the child is paramount."

***S.W.D. v. S.A.R.***, 96 A.3d 396, 400 (Pa. Super. 2014) (citation omitted).

In regard to his first issue, Father asserts that the trial court erred in basing its custody decision on the "'norm' and 'policy' in favor of substantially equal parental custody[,]" Father's brief at 39, rather than on its determinations relating to the sixteen custody factors listed in 23 Pa.C.S. § 5328. Father emphasizes the introduction to section 5328, which provides that "the court shall determine the best interest of the child by considering all

- 7 -

relevant factors, giving weighted consideration to those factors which affect the safety of the child…." 23 Pa.C.S. § 5328. In response to this argument, the trial court stated:

> In his 4th fourth error complained of[,] Father asserts that the trial [c]ourt abused its discretion and erred as a matter of law by applying a policy "to award parents equal custody time" rather than the best interests of the child. The trial [c]ourt did not do as Father suggests. Father has taken the [c]ourt's pronouncement out of context and the trial [c]ourt concedes that its[] choice of words could have been better. It is the policy of the trial [c]ourt to award custody on a substantially equal basis when after considering the factors enumerated in the Custody Act[] there is no compelling reason to treat the parties' custody time differently. Neither parent has a presumption in their favor [indicating] that custody be awarded equally. 23 Pa.C.S. § 5327(a). The trial [c]ourt considered all the custody factors found at 23 Pa.C.S. § 5328(a) in making its determination to award [C]hild's parents substantially equal custody time.
>
> Father and the trial [c]ourt do not agree on what is in Child's best interests. For Child to properly maintain his bond with each parent[,] he must have a meaningful relationship with each of them. This can best be achieved by Child spending significant time with both parents. Father wishes to marginalize Child's relationship with Mother. He asserts that it is in Child's best interest that Child lives primarily with him. He proposed that Mother have only two (2) to three (3) visits with Child each year lasting not more than 10 days in her home state of Washington. Additionally, he offered Mother custody time in Father's home community of Port Allegany knowing that it was not feasible for Mother to exercise such time. Mother on the other hand proposed that she and Father exchange custody on a quarterly basis.

Trial Court's Pa.R.A.P. 1925(a) Opinion (TCO), 4/14/20, at 7-8. Father has not convinced this Court that the trial court did not follow the dictates of section 5328. The trial court explained the basis for its decision and has not

erred or abused its discretion in constructing the custody arrangements. Father's first issue does not provide him with any relief.

The main thrust of Father's arguments relevant to his second and third issues center on his contention that the trial court did not accurately assess the evidence presented and, therefore, could not have arrived at a substantially equal shared custody arrangement. Specifically, Father cites Mother's alcohol and drug abuse, her paramour's history of assaultive behavior, and her attempts to move Child to Washington unilaterally. Father also mentions evidence presented at trial dealing with Mother's employment history, her residency, the availability of both parents to care for Child, Mother's past sexual abuse of a child, the parties' use of video calls, Child's sibling relationship with his half-brother, and the conflict between the parties. Essentially, Father cites evidence in a manner that is most favorable to him.

However, based upon our review of the record, we conclude that the trial court considered all relevant factors. We also note that its findings are supported by the record. Father is basically requesting that we reject the trial court's findings and credibility determinations and accept the findings he proposes. We cannot do so. Rather,

> [w]e must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand.

***J.R.M. v. J.E.A.***, 33 A.3d 647, 650 (Pa. Super. 2011).  Moreover, we recognize that this must have been a difficult decision for the trial court in that each parent loves Child and wants to develop a strong and caring relationship with Child.  As this Court has stated, "the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record."  ***E.D. v. M.P.***, 33 A.3d 73, 76 (Pa. Super. 2011).  Because we do not determine that the trial court's conclusions are unreasonable in light of the sustainable findings, which are based upon the evidence presented, we are compelled to affirm the trial court's decision.  Father has not convinced us otherwise.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/13/2020