J-S11045-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| S.M.E., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| R.J.E. | : | No. 1937 EDA 2015 |

Appeal from the Order entered June 2, 2015
in the Court of Common Pleas of Philadelphia County,
Family Court Division, at No(s): OC 1002022

BEFORE: FORD ELLIOTT, P.J.E., OTT and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:  **FILED SEPTEMBER 07, 2016**

S.M.E. ("Mother") appeals from the Order denying Mother's Petition for Modification of the Custody Order entered on August 25, 2014.[1]  We affirm.

In its Opinion, the trial court set forth the relevant factual and procedural history, which we adopt for purposes of this appeal.  ***See*** Trial Court Opinion, 5/25/16, at 1-2.

On June 2, 2015, following a hearing, the trial court entered an Order which amended the August 25, 2014 Custody Order and essentially denied Mother's Petition for Modification.  Mother filed a timely Notice of Appeal and a Pa.R.A.P. 1925(b) Concise Statement of Errors Complained of on Appeal.

Thereafter, the trial court issued its Opinion, pursuant to Pa.R.A.P. 1925(a).  However, the trial court failed to address the sixteen factors that

---

[1] The Custody Order pertains to the three minor children of Mother and R.J.E. ("Father") (hereinafter "Children").

the trial court *must* consider when making a "best interests of the child"
analysis for a custody determination under the Child Custody Act ("the
Act").[2]  *See* 23 Pa.C.S.A. § 5328(a).[3]  Accordingly, this Court vacated the
trial court's June 2, 2015 Order, and remanded this matter for the
preparation of a new order and opinion compliant with section 5323(d) of
the Act.  *See* S.M.E. v. R.J.E., 1937 EDA 2015 (Pa. Super. filed April 29,
2016).  The trial court complied, and entered an Opinion and Order on May
25, 2016.  Accordingly, this matter is now ready for our review.

On appeal, Mother raises the following issues for our review:

1.     Whether the trial court erred in refusing to modify the
       Custody Order to allow Mother to care for her [C]hildren
       during fifty-two (52) overnights per year when Mother is
       available and Father leaves [C]hildren with a baby-sitter
       due to his work schedule[?]

2.     Whether the trial court violated Mother's fundamental
       constitutional parenting rights by depriving her of
       [C]hildren during fifty-two (52) overnights per year and

---

[2] *See* 23 Pa.C.S.A. §§ 5321 *et seq*.  Because the custody trial was held in
June 2015, the Act applies to this case.  *See C.R.F. v. S.E.F.*, 45 A.3d at
445 (holding that, if the custody evidentiary proceeding commences on or
after the effective date of the Act, *i.e.*, January 24, 2011, the provisions of
the Act apply).

[3] Moreover, section 5323(d) mandates that, when the trial court awards
custody, it "*shall* delineate the reasons for its decision on the record in open
court or in a written opinion or order."  23 Pa.C.S.A. § 5323(d) (emphasis
supplied).  Our review of the hearing transcript disclosed that, while the trial
court had addressed *some* of the section 5328(a) factors at the hearing, it
did not address *all* of them.  *See* 23 Pa.C.S.A. § 5323(d).  Further, our
review of the record disclosed that the trial court had not addressed *all* of
the section 5328(a) factors in a written opinion or order.  *See id*.

> entrusting [C]hildren to a third party who was not a party to the custody litigation[?]

Mother's Brief at 3.[4]

> When reviewing a custody award,
>
> our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***C.R.F. v. S.E.F.***, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

> Additionally,
>
> [t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

---

[4] In her brief, Mother attempts to raise several issues that were not raised in her Concise Statement, and are not listed in her Statement of the Questions Involved. Accordingly, we decline to address them. ***See Commonwealth v. Lord***, 719 A.2d 306, 309 (Pa. 1998) (holding that, if an appellant is directed to file a concise statement of matters to be raised on appeal pursuant to Pa.R.A.P. 1925(b), any issues not raised in that statement are waived); ***see also*** Pa.R.A.P 2116(a) (providing that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.").

***Ketterer v. Seifert***, 902 A.2d 533, 540 (Pa. Super. 2006) (citation omitted).

In any custody case decided under the Act, the paramount concern is the best interests of the child. ***See*** 23 Pa.C.S.A. §§ 5328, 5338. Section 5338 of the Act provides that, upon petition, a trial court may modify a custody order if it serves the best interests of the child. 23 Pa.C.S.A. § 5338; ***see also E.D. v. M.P.***, 33 A.3d 73, 80-81 n.2 (Pa. Super. 2011). Section 5328(a), which sets forth a list of sixteen factors that the trial court *must* consider when making a "best interests of the child" analysis for a custody determination, provides as follows:.

### § 5328.  Factors to consider when awarding custody

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

In her first issue, Mother contends that the trial court erred by denying her Petition to modify the custody Order to permit her to have custody of Children on the fifty-two evenings and overnights per year during which

Father works. Mother's Brief at 14. Mother asserts that the trial court failed to "take Father's absences into serious consideration" and "did not engage in any analysis as to how Father's absences affect[] [C]hildren." *Id*. Mother claims that the trial court "summarily disposed of the undisputed allegations of [C]hildren's academic decline and missed projects" since their paternal aunt replaced Mother on Mondays and Tuesdays. *Id*. at 13, 14-15. Mother argues that the custody "Order serves no legitimate purpose other than to alienate [C]hildren from Mother." *Id*. at 16. Mother contends that "the trial court failed to explain how entrusting [C]hildren to a non-parent, on a regular and frequent basis, serves the best interest of [C]hildren." *Id*. at 17. Mother asserts that the "trial court fails to understand how [C]hildren benefit from being in the care of [M]other." *Id*. at 18.

The trial court addressed Mother's first issue, discussed each of the section 5328(a) factors, and concluded that her first issue lacks merit. *See* Trial Court Opinion, 5/25/16, at 2-9. We discern no abuse of discretion or error of law by the trial court; nor do we conclude that the June 2, 2015 Order is unreasonable in light of the sustainable findings of the trial court. *See id*. Accordingly, we cannot grant Mother relief on her first issue.

Mother's second issue was not raised in her Concise Statement. Accordingly, she failed to preserve it for our review. *See Lord*, 719 A.2d at 309 (Pa. 1998).

Order affirmed.

J-S11045-16

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/7/2016

S11045-16

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
DOMESTIC RELATIONS DIVISION

15 JUL 30 PM 4: 17

PRO PROTHY

SHANNON M. EASLEY
    Appellant

    VS.

ROBERT J. EASLEY
    Appellee

:
:
:
:
:
:
:
:
:
:
:
:
:
:

DOCKET NO. 0C1002022

1937 EDA 2015

2633 EDA 2014

I hereby certify that the foregoing
is a true copy of the original as same
appears in the records of this Court this
date _____
by: _____ FRED KELLER ___ 7·3, ·15
CLERK of Court CERTIFIED COURT

**OPINION**

Mother/Appellant Shannon Easley ("Mother") appeals from the child custody order entered

June 2, 2015, which denied Mother's Petition to Modify the order of August 25, 2014, and allowed

Father to have custody during the daytime on Mondays of his custody week when school was not in

session.

Procedural History

Mother first filed a complaint for custody of the three children Robert Easley III, born

November 9, 2000, Jason Easley, born April 15, 2004, and Rachel Easley, born October 2, 2006, on

November 8, 2010, which was dismissed for lack of prosecution on April 11, 2011. She filed for

same again on June 29, 2011, subsequent to which a temporary order was entered by agreement

between the parties on November 21, 2011, which provided that Father had periods of custody on

alternating weeks from Thursday after school until noon on Saturday, then on the following week he

had custody from Wednesday after school until 6:00 p.m. Thursday, and on Friday at 6:00 p.m. until

4:00 p.m. Sunday. Father thus had custody for five overnights every two weeks.

A final order was entered on May 23, 2012, which provided that Mother and Father would

share physical and legal custody of the three children, with Father having custody on alternate weeks from Wednesday after school until Sunday afternoon, plus one afternoon during the week, then on Thursday after school to Friday morning the following week. The order contained additional provisions for holidays and vacation. That schedule still provided for five overnights of custody for Father every two weeks.

Father filed for modification on May 10, 2013 and Mother filed for same on May 20, 2013. After several continuations and a hearing before a custody master, the matter was tried before this court on August 21, 2014. An order was entered on August 25, 2014, which provided that Mother and Father would share physical and legal custody of all three children, with Father having custody on alternating weeks from Monday after school to 6:00 p.m. Sunday, and Mother having custody on alternating weeks from 6:00 p.m. Sunday to the following Monday morning. No appeal was filed from this order. This order increased Father's custody time with the children to six overnights every two weeks.

Mother filed for modification less than four months later, on December 15, 2014, asking that the August 25, 2014 order be changed to give her custody on Monday and Tuesday of Father's week, which would leave Father with custody from Wednesday after school to Sunday, 6:00 p.m. on alternating weeks. This would reduce Father's custody time from six overnights every two weeks to four overnights every two weeks, reducing Father's custody with the children to fewer days than that to which Mother initially agreed in November, 2011.

Factual Background

Father works as a printer and lives with his sister. He works from 7:00 p.m. to 7:00 a.m. Sunday through Tuesday and on alternating Wednesdays and has the remaining days off. This was

2

the same schedule Father had in August, 2014.

Mother is a triage nurse whose schedule changed subsequent to the August, 2014 order. She works from home from 5:00 p.m. to 8:00 a.m., Monday through Sunday, on alternating weeks. Her previous schedule was a daytime schedule, where her days off alternated biweekly.

Statement of Errors

The Concise Statement of Errors Complained of on Appeal submitted by Appellant contained a brief recitation of some facts as well as points of error. The points of error are set forth in separate paragraphs as follows:

> This Honorable Court of Common Pleas erred in ruling that Mother should not be permitted to have custody of her children on Mondays and Tuesdays and thus have the opportunity to take them to sports practices, prepare dinner for them, help them with their homework and put them to sleep.
>
> The Court further erred in not noting that the aunt did not appear at the hearing even though she is a member of Father's household.
>
> The trial Court further erred in disallowing Mother's counsel to examine Father on subjects relevant to the Children's wellbeing, such as (1) the Children being late for school during Father's custodial time and missing sports practices; (2) Father drinking alcohol around the Children at the football field of Catholic Youth Organization where the Children play sports, then driving the Children home; (3) Father's living conditions and arrangements; and (4) any subject that was presented at the parties' previous trial.
>
> The Court further erred in not taking into account the Children's bad grades in school incurred subsequent to the change in schedule on August 25, 2014.
>
> The Court further erred in failing to consider Mother's reasons for seeking modification of the Custody Order, but instead granted Father's requests.
>
> The Court erred in granting Father custody from 10 a.m. on Mondays when school is not in session. It can be reasonably inferred that Father is unable to work from 7 pm until 7 am and then care for the children all day on Mondays and Tuesdays without getting sleep. Undoubtedly, Father's sleeping hours

3

must coincide with the Children's waking hours.

Discussion of Factors

The court discussed the factors under Section 5328 of the custody code (23 Pa.C.S.A. § 5328) on the record as set forth on pages 52-56 of the transcript. It was noted that it was difficult to know what exact discussion should occur since Mother's complaints were limited to concerns which occurred subsequent to August, 2014, after the matter had been fully tried. The focus of Mother's testimony was why she should be granted the requested modification.

Moreover, in her points of error, Mother does not identify any specific factors not considered and/or discussed by the court, and, instead, she cites testimony as to why evidence does or does not support the requested modification. This court will, therefore, address the evidentiary points raised in Mother's points of error and then note how said points are incorporated into specific factors.

Denying Mother's Request for Schedule Modification

Mother requested that the custody schedule be modified to give her custody of the children on Mondays and Tuesdays so that she could perform the parenting duties of dinner preparation, overseeing homework, taking them to sports practices and putting them to bed.

As previously stated, Father works from 7:00 p.m. to 7:00 a.m. on Monday and Tuesday. He takes the children to school in the morning and picks them up after school, oversees the homework and feeds them before he goes to work. Notes of Testimony, June 2, 2015, pp. 9, 23-24. His sister – paternal aunt – provides child care for the rest of the evening. He is thus able to provide the parental duties for the daily physical and educational needs of the children and has appropriate child-care arrangements for the time he works. Factors Nos. 3, 10 and 12. While Mother would be available to the children the entire evening on both of those nights that availability in itself should not necessarily

4

give rise to a change in the children's schedules.

Referring back to the original custody schedule entered by agreement between the parties, Father's custody time with the children has gradually increased. While Mother testified that she would be available to parent the children on Mondays and Tuesdays if Father's schedule were changed, there was no evidence demonstrating that reducing Father's custody time with the children to fewer days than initially agreed to by Mother in 2011 has specific benefits for the children. To the contrary, this change would disrupt the stability and continuity established for the children over a period of years, which must be considered under Factor No. 4.

Moreover, and most significantly, all three children are satisfied with the current schedule. It was important to the boys in particular, that they can now spend more time with Father than they had previously, and they want the current schedule to remain. Thus, Factor No. 7, the well-reasoned preference of the children, based upon their respective levels of maturity and judgment, was very important.

Non-Appearance of Paternal Aunt

Mother alleges it was error not to note that paternal aunt did not appear at the hearing. However, it is unclear how this was error on the part of the court, or which Factor would be implicated. Paternal aunt is one of the extended family members available to the children (Factor No. 5), and, as was previously stated, she provides child care when Father works on Monday and Tuesday evenings (Factor No. 12). There was no evidence that a Notice to Attend had been served on her by Mother's attorney; no request was made to the court to direct that she appear and her absence was not raised as an issue during the hearing.

<u>Disallowing Cross-Examination</u>

Mother alleges that this court disallowed cross-examination on subjects relevant to the children's well-being:

(a)     Any subject presented at the parties' previous trial. This court interrupted questions about whether Father did or did not take the middle child for tutoring to inquire what time frame was involved. This court did not intend to allow that line of questioning if the incident occurred before August 25, 2014, the date of the prior hearing, because Mother did not appeal from that order, nor file for reconsideration of same. Hence, Mother would not be permitted to later raise issues which she failed to raise at the prior hearing. No clarification was then offered by counsel or Mother, and counsel began a different line of questioning. N.T., pp. 28-29.

(b)     Whether Father had been drinking at a football event of the children. This court also interrupted questions about whether Father was drinking beers at a football event sponsored by the Catholic Youth Organization to note that, "[I]f father was intoxicated, or you had reason to believe father was intoxicated or incapable of driving safely, then that's a fair question. But having a beer or two and drinking – and driving, ordinarily one or two beers does not inhibit a person's ability to drive." N.T., pp. 34-35. Father was first asked whether he ever drank and drove with the children in the car (Answer: No.) and whether he remembered drinking beers at the football field, to which he responded that his sister was present and did the driving. N.T., p. 34. After the court's remarks and instructions to continue, counsel then responded, "Well my information was that it was relevant, but he denies. So I have no more questions."

While the Catholic Youth Organization might have taken issue with Father's drinking beer at the children's athletic events, the testimony elicited from Father did not rise to the level of alcohol

abuse (Factor No. 14) and the fact that paternal aunt was doing the driving eliminated any concern about endangering the safety of the children.

(c) Where the children sleep. When counsel began asking Father where the children slept at his home, the court again interrupted and disallowed that line of questioning because the children's sleeping arrangements at Father's were considered by the court when the August 25, 2014 order was fashioned. N.T., p.24.

The court did not disallow any other questions or line of questioning. Contrary to the statements in the points of error, questions were asked about missed practices (N.T., pp. 16, 18, 20), to which Father responded that he did not remember or otherwise denied, and school projects (N.T., pp. 26-27), to which Father responded that he was never informed about any project except on one occasion when the child did not finish a project during his week of custody with Mother. This court even assisted in the questioning by occasionally asking for further clarification from Father and pressing him on his responses.

Drop in Grades Subsequent to August 25, 2014

The primary focus of Mother's petition for modification was that she was available to parent the children on Monday and Tuesday evening when Father worked, and that Father's unavailability at that time was contributing to a decline in the children's school performance. However, notwithstanding Mother's testimony that the children's grades were dropping, she produced no documentation whatsoever in support of this testimony – no report cards, no notes from teachers, nothing to support her testimony. N.T., p. 42. By way of response, Father testified that the oldest child did have poor grades, but this was a problem with which both parents had been concerned over the years, and he tried to address it by restricting the child's activities as a way of imposing

7

discipline. N.T., pp. 9-11. He further testified that the oldest child was tardy during the first week of Father's custody schedule because Father was getting his work schedule switched, but no tardiness occurred thereafter. N.T., p. 12.

Thus, this court could not take into account "bad grades in school incurred subsequent to the change in schedule on August 25, 2014," because, other than Father's testimony as noted above and Mother's general concerns, there simply was no evidence upon which this court could conclude that any change in the children's grades had actually occurred subsequent to August 25, 2014, let alone consider that as a relevant factor.

Failing to Consider Mother's Reasons for Seeking Modification

This court did not fail to consider Mother's reasons for seeking modification. It was simply a matter that, under the factors implicated in Mother's request, as discussed above, the evidence did not support a modification of the custody schedule.

At first glance, it is reasonable that a parent seeks to have custody of the children during the periods of time when the other parent is unavailable due to work. However, expanding Father's custody time with the children was the precise issue presented to the court in August, 2014, and Father's availability and schedule were fully discussed and considered at that time, as well as the preferences of the children for more time with Father. The transcript of that hearing was never requested, nor reduced to writing, but these matters must be noted for appellate review, lest it appear that sufficient consideration was not given to the factors of performing parental duties and tending to the daily needs of the children during the hearing on June 2, 2015.

It must also be noted that Father is present on Mondays and Tuesdays for the important duties – transportation of the children to and from school, overseeing homework and feeding the children.

8

Paternal aunt assumes supervision of the children only when she arrives home from work after 6:00 p.m. N.T., p. 9. Father is fortunate to have paternal aunt available for child care, just as Mother had her fiancée available when she worked a different schedule, as was discussed during the August, 2014 hearing. Thus, when parents have to work, they should be free to take advantage of a care-giver who is close at hand and well-known to the children so they do not have to relinquish custody time because they have to work.

Granting Additional Custody Time for Father on Mondays

It is difficult to identify which Factor is applicable with regard to increasing Father's time with the children on Mondays of non-school days for approximately five hours, and Mother's points of error do not raise any Factor which would be in opposition to this schedule change. However, it would be advantageous for the children if they make a transition to the other parent's home earlier in the day when they have no school so as to be able to plan out and enjoy the entire day with the other parent, instead of spending more than half the day with the first parent, then disrupting the day to transition to the other parent. Factor No. 4. Thus, while this was a minor change in Father's custody schedule, it did serve the purpose of one of the enumerated factors.

Conclusion

Mother did not meet her burden of proof for showing that the modification she requested would be in the best interests of the children under the Factors to be considered when awarding custody pursuant to Section 5328 of the custody code. The issues before the court were limited to how the schedule implemented in August, 2014 failed to serve the best interests of the children, since the August, 2014 hearing was a full hearing on whether the custody schedule of Father should be changed by way of an increase. Mother neither appealed nor filed for reconsideration of said order,

and she is not entitled to re-litigate the issues tried therein by filing a petition for modification less than four months after entry of the order. Mother failed to show the children's best interests were not being served by the order entered in August, 2014, and thus, Mother's petition for modification was denied.

BY THE COURT:

DATE: ___July 30, 2015___

_____

DORIS A. PECHKUROW, J.

COPIES SENT
PURSUANT TO Pa.R.C.P. 236(b)

JUL 3 0 2015

FIRST JUDICIAL DISTRICT OF PA
USER I.D.:

10

## SERVICE

Copies of the foregoing Order have been sent to the following this 30th day of July, 2015:

Fred Keller, Clerk of Court
1133 Chestnut Street, 1st Floor
Philadelphia, PA 19107
*(Hand Delivered)*

Shannon Easley
12632 Medford Road
Philadelphia, PA 19154
*(Regular Mail)*

Irena Shiloh
Silvers, Langsam & Weitzman
10819 Bustleton Avenue
Philadelphia, PA 19116
*(Regular Mail)*

Robert Easley
19 South Sylvania Avenue
Rockledge, PA 19046
*(Regular Mail)*

*Joanne Nutter*
*Secretary to the Honorable Doris A. Pechkurow*