J-A26028-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| A.B. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| L.M.H., F/K/A L.M.B. | : | |
| | : | |
| Appellant | : | No. 484 WDA 2018 |

Appeal from the Order March 13, 2018
In the Court of Common Pleas of Venango County Civil Division at No(s):
Civ. No. 473-2011

BEFORE:   BENDER, P.J.E., SHOGAN, J., and MURRAY, J.

MEMORANDUM BY SHOGAN, J.:                    FILED DECEMBER 14, 2018

L.M.H., formerly known as L.M.B. ("Mother") appeals from the order of March 13, 2018, denying her March 8, 2017 Petition for Modification of Custody of the parties' ten-year-old daughter, K.B. ("Child").  We affirm.

In 2013, following a custody trial, the Venango County Court of Common Pleas awarded Mother and A.B. ("Father") shared legal and physical custody. The trial court awarded Father primary physical custody during the school year and Mother, partial custody two out of three weekends during the school year. Custody Order, 8/5/13, at 1.  During the summer months, on an alternating schedule, the court granted Mother physical custody for two weeks and Father, one week.  Id. at 1–2.  Following that trial, the trial court filed an extensive, thorough, and thoughtful twenty-eight-page opinion evaluating all of the

required custody factors. Opinion, 8/5/13. Neither party filed an appeal in 2013.

Mother, a juvenile probation officer, resides in Glassport, Pennsylvania, in the South Allegheny School District with her husband ("Stepfather") and their son, who was born in August of 2016. Report and Recommendations of Custody Conciliator, 4/21/17, at 1. Father, who works for Franklin Industries, resides with Child in a three bedroom home in Franklin, Pennsylvania, located in the Valley Grove School District, where Child is in the fourth grade. Id. Father's eleven-year-old son "is sometimes in the home." Id.

On March 8, 2017, Mother filed a Petition for Modification requesting primary physical custody of Child during the school year. By order entered May 2, 2017, and pursuant to Pa.R.C.P. 1915.11, the trial court appointed Diane Hasek, Esquire, as counsel for Child. Following a three-day hearing in November and December of 2017, the trial court denied Mother's modification petition on March 13, 2018. Mother filed a timely notice of appeal and concise statement of errors complained of on appeal on April 6, 2018. The trial court's Pa.R.A.P. 1925(a) opinion referenced and relied upon the trial court's findings in support of its March 13, 2018 order denying modification.

Mother raises the following three issues on appeal:

I.    Did the lower court err in failing to address the Child's preference as communicated both directly and indirectly to reside with Mother?

II.  Did the lower court err in failing to address the issue of Father's admitted continued use of alcohol in view of Father's history of alcoholism and DUI offenses?

III.  Was the decision of the lower court to affirm the current custody order with Father retaining primary custody of the child contrary to the weight of the evidence of record in this case?

Mother's Brief at 5 (unnecessary capitalization omitted).

In custody cases under the Child Custody Act, ("the Act"), 23 Pa.C.S. §§ 5321–5340, our standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record.

C.R.F. v. S.E.F., 45 A.3d 441, 443 (Pa. Super. 2012) (internal citation omitted). This Court "will accept the trial court's conclusion unless it is tantamount to legal error or unreasonable in light of the factual findings." M.G. v. L.D., 155 A.3d 1083, 1091 (Pa. Super. 2017) (citing S.W.D. v. S.A.R., 96 A.3d 396, 400 (Pa. Super. 2014)).

Section 5328(a) of the Act sets forth the best interest factors that the trial court must consider when awarding custody. E.D. v. M.P., 33 A.3d 73, 80–81, n.2 (Pa. Super. 2011). Those factors are as follows:

§ 5328.  Factors to consider when awarding custody

(a) Factors.—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

In her first issue, Mother asserts that the trial court erred in failing to address statutory custody factor seven, which requires the court to consider "[t]he well-reasoned preference of the child, based upon the child's maturity and judgment." 23 Pa.C.S. § 5328(a)(7). Our review of the record reveals that the trial court interviewed Child at the start of the modification hearing, with Ms. Hasek conducting direct examination and counsel for Mother conducting cross-examination. N.T., 11/30/17, at 4–79.

Mother admits that Child, when asked how often she wanted to spend time with each parent, did not have an opinion. Mother's Brief at 14.

Nonetheless, Mother avers that Child eventually expressed the desire to spend more time at Mother's home. Id. Mother acknowledges that the trial court need not set forth a detailed analysis of the evidence of record, citing M.J.M. v. M.L.G., 63 A.3d 331, 336 (Pa. Super. 2013), but contends that the "problem in the case at bar is that there is no indication that the trial court considered" Child's testimony. Mother's Brief at 20. Mother suggests the record supports Child's desire to live with Mother, and we should therefore remand for further consideration of Child's preference. Id.

The trial court stated the following regarding its consideration of factor seven:

> (7) The well-reasoned preference of the child, based on the child's maturity and judgment: While the [c]ourt took testimony from [Child], she very significantly did not wish to express any preference as to living primarily with either party and indicated she had a very good relationship with both parents.

Trial Court Order, 3/14/18, at unnumbered 3 (emphasis in original). Contrary to Mother's claim, we conclude that this representation by the trial court is sufficient evidence that it considered Child's testimony.

Child testified that she was in the fourth grade and had achieved "honor roll." N.T., 11/30/17, at 6. Child indicated that the present custody schedule was "good." Id. at 7. When asked whether Child had "any feelings about whether or not you'd like to spend more or less time with" Mother's infant son, Child responded, "Mmm. Nope." Id. at 9. Child testified that she likes the activities she does with Father and the activities she does with Mother. Id. at

- 6 -

21–22. Child testified that she gets along "really good" with her paternal aunt and uncle, who she sees often, but her maternal aunts and uncles live in Allentown and Harrisburg. Id. at 22–23. Child also testified that she gets along "really well" with the six-year-old son of Father's girlfriend. Id. at 27. Pointedly, Ms. Hasek inquired, "Do you have an opinion about how much time you should spend at Daddy's house that you want to share today?" Id. at 28. Child responded, "No." Id. Child testified that she "just want[ed] the Judge to make a decision about what should happen." Id.

Upon examination by Mother's counsel, Child admitted that Mother told her if she went to school in Mother's school district, Stepfather's parents could help get Child to and from the school. N.T., 11/30/17, at 36. Mother's counsel asked Child if she knew where she would like to go to school and Child responded, "SA." Id.

We also note that much of Child's testimony regarding her desire to reside in Mother's school district resulted, in our view, from the leading nature of the questions posed by Mother's counsel. For example, the following testimony was elicited by Mother's counsel:

[By Mother's Counsel]: [Y]ou want Mommy to help you with girl things. Is that what you mean?

[Child]: Yeah.

Q: Okay. Okay. Uh—Is that sometimes a thing that's hard for Daddy to do?

[Child]: Yes.

Q: And why --- why do you mean that --- What do you mean by it's hard for him to do? If you could just give us an example of something that you—you want him to try to help you with that— that's hard for him to do.

[Child]: Mmm—I can't think of anything.

Q: Uh—Is it hard maybe with dressing and things like that?

[Child]: Yeah.

Q: Okay. Uh—Is it hard for him maybe to do your hair and things like that?

[Child]: Yeah.

Q: Okay. Uh—Does—I mean, in your opinion, does Mommy do a better job of helping you to get dressed and—and your—and with your hair?

[Child]: Yeah.

* * *

Q: Okay. Who helps you dye or color your hair:

[Child]: Uh—Mommy has—uh—I forget his name.

N.T., 11/30/17, at 40–42.

As we previously stated:

Mother misinterprets the depth of the trial court's obligations. The Custody Act requires only that the trial court articulate the reasons for its custody decision in open court or in a written opinion or order taking into consideration the enumerated factors. 23 Pa.C.S.A. §§ 5323(d), 5328(a). . . . [T]here is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations.

M.J.M., 63 A.3d at 336 (emphasis added). Moreover, our case law is clear

that the amount of weight that a court gives to any one factor is within its

discretion. Id. at 339 ("It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case."). We have stated:

> The discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

Ketterer v. Seifert, 902 A.2d 533, 540 (Pa. Super. 2006) (citation omitted). The trial court herein adequately addressed the Section 5328(a) factors in its March 14, 2018 order denying modification and in particular, considered Child's preferences. We find no error on the part of the trial court or merit in Mother's argument.

Mother next asserts that the trial court erred in failing to address Father's "admitted continued use of alcohol in view of [his] history of alcoholism and DUI offenses." Mother's Brief at 21. This claim references statutory custody factor fourteen: "The history of drug or alcohol abuse of a party or member of a party's household." 23 Pa.C.S. § 5328(a)(14). Mother underscores Father's testimony on cross-examination that he is a recovering alcoholic, who became sober in 2009. Mother refers to Father's two convictions for driving under the influence of alcohol ("DUI") that occurred before 2009, and emphasizes Father's testimony that he now has "a couple of glasses of wine here and there every couple months." Mother's Brief at 21.

Mother argues that the trial court "glossed over the admission by Father" and "just took at face value Father's claim that as an alcoholic he can control his alcohol intake." Mother's Brief at 22. Mother retreats to the fact that Father had undergone a rehabilitation program prior to the parties' separation in 2009. We note that Mother cites no case law in support of her position. See In re M.Z.T.M.W., 163 A.3d 462, 465 (Pa. Super. 2017) ("It is well-settled that this Court will not review a claim unless it is . . . supported by citations to relevant authority.") (citing In re W.H., 25 A.3d 330, 339 n.3 (Pa. Super. 2011).

Regarding custody factor fourteen, the trial court stated as follows:

(14) The history of drug or alcohol abuse of a party or member of a party's household: The [c]ourt does not find there is any significant current issue regarding drug or alcohol abuse by either parent or a member of the parties['] household. While there is some past history[,] the [c]ourt does not find this to be significant or present at this time.

Order, 3/14/18, at unnumbered 4 (emphasis in original).

Father reminds us that Mother raised the same issues in the previous custody trial, and the trial court did not find Father's previous DUI convictions a strong factor in denying him primary physical custody then or now. Father's Brief at 5. Herein, Father testified that "every couple months" he has "a couple glasses of wine here and there." N.T., 12/1/17, at 232. When pressed by Mother's counsel, Father stated, "I haven't been drunk and I haven't—I just— I've had one (1) or two (2) with a—a meal and that's it. And it's been over— I don't have it regularly. I mean, it's just been on occasion." Id. at 233.

Father admitted that when he was in his "early twenties" and married to Mother, he "was miserable in my marriage. Um—I escaped through alcohol." Id. at 234. Father adamantly testified that his problem with alcohol was firmly in the past. Id. at 232–236. Father averred that he has been sober since December 29, 2009. Id. at 237. Father also presented testimony from witnesses that he does not regularly drink alcohol. See, e.g., N.T., 12/12/17, at 59–61. Mother's implication at the hearing that Father's occasional glass of wine, in light of his history, impacts his ability to care for Child was unsubstantiated. Mother offered no testimony regarding the effect or significance of Father's occasional glass of wine. The trial court clearly considered the testimony and discounted it. We find no abuse of discretion by the trial court.

In Mother's final issue, framed as a weight-of-the-evidence claim, Mother argues the court overlooked these facts:

⟩ Father admitted that he has less flexibility than Mother and Stepfather, and Child must go to the YMCA after school.

⟩ Because Father sometimes works a 4:45 a.m. to 3:30 p.m. shift, he must awaken Child at 4:30 A.M. to take her to his mother's house a few minutes away. "Such a disruption . . . would be unnecessary at Mother's house."

⟩ The paternal grandfather testified that due to Father's work schedule, Child stays at his house one to two nights per week.

⟩ Child testified that when Father assists her with her homework, he often yells at her, scaring her and causing her to cry, "whereas Mother—who assists [Child] with her homework on weekends—is calmer and helps work her through the problems."

ᒉ Mother has a more stable home life, as she is married and she and [Stepfather] purchased a home in Glassport in 2015 (statutory custody factor 4).  Father has moved to multiple different school districts to live with various girlfriends, all without informing Mother.

ᒉ Testimony established that Mother is more likely than Father to encourage continuing contact with Child (statutory custody factor 1).

Mother's Brief at 24–26.  Once again, Mother cites no case law in support of her argument.  See In re M.Z.T.M.W., 163 A.3d at 465 (arguments should be supported by citations to relevant authority).

Father responds with his own list of factors presented to the trial court, as follows:

ᒉ Father presented evidence of strong family ties that Child has in the vicinity where Father lives.  The evidence included the backgrounds of the family members, Father's strong work ethic and Father's constant attention to Child's needs.  Mother has no family support near her other than Stepfather's family.

ᒉ Mother resides within one-half mile radius of ten registered sex offenders.

ᒉ Child attends church with Father's family.

ᒉ Father's family consists of "educators."

Father's Brief at 5–7.

We have read all of the testimony, carefully considered Mother's arguments, and consulted the relevant law.  We rely on the trial court's conclusions, as they are supported by the evidence of record.  See D.K.D. v. A.L.C., 141 A.3d 566, 572 (Pa. Super. 2016) ("We defer to the trial court's

factual findings that are supported by the record and its credibility determinations."). The trial court stated:

> The [c]ourt having taken a long time to take testimony and evidence in this case and review that testimony and evidence and carefully considered all of the factors, hereby specifically finds that both [Mother] and [Father] are equally able to provide for [Child] and meet all of her needs both educational, emotional and in family life. The [c]ourt finds that the school districts in both households are adequate for [Child's] educational needs which makes this case one of the difficult cases in deciding. In this case both parents clearly support [Child], love [Child] and [Child] loves each parent equally. Unlike cases in which there is a clear cut parent who can provide a better living or household environment for the child, those issues are not present in this case. As [Child] did not express a preference as to which household she would primarily prefer to live in and based on the fact that [Child] is thriving both educationally and emotionally in her current custody arrangement, the [c]ourt does not find that it is in the best interest of [Child] to change custody at this time.

Order, 3/14/18, at unnumbered 5. We cannot say that the trial court abused its discretion in denying Mother's petition to modify custody.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/14/2018